Wilbur E. Swain, Individually, and as Class Representative of Members of Central City Council, an Illinois Corporation, and Central City Council, an Illinois Corporation, Plaintiffs-Appellants, v. County of Winnebago, Illinois, David W. Johnson and Helga S. Johnson, and Gunnard R. Olson and Myrtle A. Olson, Defendants-Appellees.

Gen. No. 69-2.

Second District.

August 19, 1969.

Maynard and Brassfield, of Rockford, for appellants.

Alfred W. Cowan, Jr., Special Assistant State's Attorney, of Rockford, and Reno, Zahm, Folgate and Skolrood, of Rockford, for appellees.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

This is a declaratory judgment action brought to challenge the validity of a zoning ordinance adopted by the Winnebago County Board of Supervisors, which ordinance rezoned the property of the defendants, David W. Johnson, Helga S. Johnson, Gunnard R. Olson and Myrtle A. Olson, to permit the construction of a shopping center. The plaintiffs' amended complaint was dismissed and they have appealed.

The defendants' property consists of 145 acres of unimproved land located in Winnebago County on East State Street Road, approximately one mile east of Mulford Road. The land had been zoned for agricultural use, and was changed by the ordinance in question to a business zoning classification to permit the development of a regional shopping center. This land is a substantial distance from the downtown Rockford area, and it is outside of the corporate limits of the City of Rockford.

There are six counts in the amended complaint. In count I, Wilbur E. Swain, individually, is the plaintiff. Therein, Swain alleged that he is a resident, citizen and taxpayer of Winnebago County, and the owner of business real estate in downtown Rockford and the operator of a retail shoe business there; that the zoning ordinance did

not receive the requisite vote of the County Board of Supervisors; that Swain's business interest and the value of his business property is adversely affected by the ordinance which would permit the development of the land for a regional shopping center; that such use affects the orderly development and redevelopment of the central city portion of the City of Rockford; that vehicular traffic in the neighborhood of the proposed regional shopping center, and along all major and minor arteries of traffic within the City of Rockford, would be substantially altered; that the use and development of schools, parks, cultural centers and every public facility within the City of Rockford and County of Winnebago would be affected; that Swain's business and business property would be greatly depressed and depreciated in value; that the valuation of his property for tax purposes would be depressed and depreciated; that Swain has invested large sums of money in his business and business property in reliance upon the zoning classifications as they existed and he had, and has, the right in law to expect stability in such classification; that the amounts of money which he pays as rent, and has paid for the purchase of an interest in the business real estate, are the result of former planning and zoning policies of the defendant county—which was to confine large and extensive central business districts to the central city district of the City of Rockford; and that as a consequence of the rezoning, Swain would be greatly damaged and injured and his income would be substantially reduced.

In count II, Wilbur E. Swain, as a class representative, is the plaintiff. Therein, Swain alleged that he is the owner of business property located in downtown Rockford and a member of the Central City Council, which is comprised of retail merchants and property owners in downtown Rockford, all of whom have an identical interest with regard to the proposed regional shopping center east of the City of Rockford; and that the issues concerning

the validity of the zoning ordinance are common to all members of the Central City Council. The other allegations of count I are repeated.

In count III, Central City Council, an Illinois corporation, is the plaintiff. Therein, the Council alleged that the business interests of the members of the Council, and the value of the downtown business properties, would be adversely affected by the zoning ordinance; that the Council brought this suit as a class action on behalf of its multiple members; that the vehicular traffic in the neighborhood of the proposed regional shopping center, as well as in the central city area, would be substantially altered; that the use and development of schools, parks, cultural centers and every public facility within the county would be affected; that the retail businesses of the members of the Council would be affected and their volume of business reduced; that the value of the business properties owned by the members would be depreciated in value; that such depreciation would also exist for tax purposes; that certain members of the Council had invested large sums of money with regard to the business and business properties in reliance upon the zoning classifications as they theretofore existed; that the various members have the right to rely upon the stability and the classifications of said ordinances; and that the rentals paid and prices paid for business properties and real estate within the central business district are the result of a former planning and zoning policy—which was that central business activities be confined to the central city district; that the zoning ordinance in question changes such zoning policy; and that as a consequence of this, the members of the Council and the Council are damaged and injured and the income of the Council and its members reduced. Other allegations of count I were also repeated.

In count IV, Wilbur E. Swain, individually, is the plaintiff. Therein, he alleged that the zoning ordinance is

462

arbitrary and unreasonable, bearing no reasonable relationship to the public health, safety and general welfare; and generally, he realleged the matters contained in count I.

In count V, Wilbur E. Swain, as class representative, is the plaintiff; and in count VI, Central City Council is the plaintiff. These counts reallege the matters asserted in count IV of the complaint.

The plaintiffs challenge the zoning ordinance on two grounds: first, that it did not receive the required vote of the County Board of Supervisors; and second, on the standard constitutional ground that the rezoning was arbitrary and bears no reasonable relationship to the public health, safety and general welfare, and, thus, is void. They concede that their attack is not based upon any statutory remedy, such as a quo warranto; and they assert that they brought this action, as residents, citizens and taxpayers of Winnebago County, and challenge an amendatory zoning ordinance on the grounds above specified.

■ The plaintiffs are not the owners of the real estate which was rezoned. To have standing to sue, under the circumstances, they have the burden of alleging facts which show that they have suffered special damage as a result of the ordinance, which differ from that suffered by the general public. Garner v. County of DuPage, 8 Ill2d 155, 158, 159, 133 NE2d 303 (1956); Bullock v. City of Evanston, 5 Ill2d 22, 33, 34, 123 NE2d 840 (1955); Hughes v. City of Peoria, 80 Ill App2d 392, 394, 395, 225 NE2d 109 (1967).

■ The necessity of showing special damage extends generally to the plaintiffs' right to challenge the validity of the zoning ordinance and not to any particular ground on which the validity is challenged. The special interest that must be shown before a taxpayer may challenge the act of a corporate body is not limited to ordinances affecting zoning. The financial or administrative affairs of

the county are not subject to question by the suit of a taxpayer unless his taxes are directly to be affected, or unless he, as opposed to the general public, has some special or distinct interest affected. Bistor v. Board of Assessors of Cook County, 346 Ill 362, 372, 373, 179 NE 120 (1931); 14 ILP, Counties, § 87, p 157; 20 CJS Counties, § 288.

The reason for such a rule is well stated in Garner v. County of DuPage, supra, where the court, on page 159, said:

"As stated in 43 CJS, Injunctions, sec 22B, where a similar rule is expressed in connection with the right of a private individual to seek injunctive relief for a public injury, 'The rule is not a technical and arbitrary one, but has a solid foundation in principle and is sustained by very sound reasons of public policy, its object being to protect defendant against a multiplicity of suits and to secure him in one suit a final determination of all the controverted questions involved.' "

■ We do not find the allegations in the complaint sufficient to establish the plaintiffs' standing to sue. There is no allegation, and it would seem that there could be none, that the general tax burden would be increased as a result of the rezoning. See: Garner v. County of DuPage, supra, 159. The allegations in regard to increased traffic and the use and development of public facilities are not special damages peculiar to the plaintiffs, as opposed to the general public. The remainder of the plaintiffs' allegations, insofar as special damages are concerned, amount to no more than allegations, differently stated, that the plaintiffs will suffer losses by reason of increased competition which will result from the new shopping center.

The property in question is distant from the business properties of the plaintiffs. There is no factual basis in

the complaint for assuming that the allegations of loss and depreciation in business interests and value of business properties could result from anything other than the new and increased competition which may result from this zoning.

The plaintiffs contend, however, that Hughes v. City of Peoria, supra, establishes their standing to sue in this case. In Hughes, the plaintiffs claimed to represent a number of persons operating businesses in the central business district of Peoria. The land, which had been rezoned to permit a shopping center, was three or four miles from the plaintiffs' businesses and properties. The plaintiffs alleged that they had invested large sums of money in their businesses and properties in reliance upon the existing zoning classifications; and that as a result of the rezoning, their businesses and properties would be greatly depressed and depreciated in value. The trial court found for the defendants on summary judgment.

The Appellate Court acknowledged, on pages 394 and 395, that the plaintiffs had the burden of establishing that they would suffer a special damage by reason of the new use, which would differ from that suffered by the general public, and at page 395, the court stated: "The allegations in the complaint of damages to plaintiffs' businesses and properties are allegations of special damage, Brown v. County of Lake, 67 Ill App2d 144, . . . ." Thus, the Appellate Court concluded that there was no basis for the trial court's finding that the properties of the plaintiffs were located so far distant from the rezoned properties so as to preclude any damage to the plaintiffs.

It is interesting to note, however, that the Appellate Court, at pages 396 and 397, referred to an allegation in the complaint that the plaintiffs would be "greatly disadvantaged in competition with the new proposed shopping center," and conceded that such an allegation is not a recognizable special damage. The court further stated

465

that all of the cases which were called to its attention clearly held that increased business competition provides no standing to complain of a zoning change, and at page 397 it cited a number of such cases.

The case of Brown v. County of Lake, 67 Ill App2d 144, 213 NE2d 790 (1966) is not authority for the proposition that losses resulting to businesses and business properties from the increase in competition permitted by a zoning change are special damages giving the injured party standing to sue. Yet, this is what we read the statement in Hughes to mean.

In both Hughes and the case at bar, the general allegations of depreciation and loss in value of the plaintiffs' businesses and business properties are mere conclusions which must be supported by specific allegations of fact which show a special damage. Winston v. Zoning Board of Appeals of Peoria County, 407 Ill 588, 594, 95 NE2d 864 (1951).

Realistically, however, the only factual basis that can be found (or assumed) to support the conclusions of damage, in both Hughes and the case at bar, is that the new competition will cause the plaintiffs' businesses to suffer.

The Brown case is not pertinent. There the plaintiffs lived across the road from the property which had been rezoned for cemetery use. The plaintiffs had a farm and husbandry operation, and they contended that the highest and best use of their land was "for residential farming purposes," and that the proposed cemetery across the road would drastically change the character of the neighborhood and reduce the value of the plaintiffs' land for its highest and best use. The court at page 152 stated "that the allegations in the complaint of damage to the property of plaintiffs located directly across the road from defendants' property by use for a cemetery which would substantially reduce the market value of plaintiffs' property is a sufficient allegation of special damage within the scope of the case of Garner . . . ." In our

466

view, this is not support for the sufficiency of the allegations in either Hughes or in the case at bar, where the properties of the plaintiffs' were located a considerable distance from the property which was rezoned.

The reference by the court in Brown v. County of Lake, supra, to Garner v. County of DuPage, supra, is important in recognizing that special damages must be established in a case such as this, and that distance is a factor which may be taken into consideration. We do not believe that distance necessarily will preclude a showing of special damage any more than we believe that proximity necessarily establishes a special damage. It is our opinion, that if the plaintiffs' property is far distant from the property which was rezoned, the plaintiffs' burden, both as to pleading and proof, is necessarily more onerous.

██ ██ From the allegations in the complaint in the case at bar, we do not believe—as apparently the court did in Hughes—that there is any valid basis for a finding of damage to the plaintiffs' businesses or properties, other than as a result of increased competition. It is not the function of the county zoning ordinances to provide economic protection for existing businesses. Exchange Nat. Bank of Chicago v. Village of Skokie, 86 Ill App2d 12, 21, 229 NE2d 552 (1967). Neither the fact that parties may suffer reduced incomes or be put out of business by more vigorous or appealing competition, nor the fact that properties on which such businesses are operated would thus depreciate in value, give rise to a standing to sue. Cord Meyer Development Company v. Bell Bay Drugs, Inc., 20 NY2d 211, 229 NE2d 44, 46, 47 (1967) ; Whitney Theatre Co. v. Zoning Board of Appeals, 150 Conn 285, 189 A2d 396, 398 (1963) ; London v. Planning and Zoning Commission of Stratford, 149 Conn 282, 179 A2d 614, 616 (1962) ; Kreatchman v. Ramsburg, 224 Md 209, 167 A2d 345, 351 (1961).

██ ██ Free and open competition has always been a strong pillar in the foundation of our society. A person

467

can have no vested or special property right in either the monopoly or competitive advantage accorded by zoning restrictions at a given time. It is the philosophy of our society that any increased competition which may result from a change in the zoning restrictions will ultimately be beneficial. A competitor who may suffer has no actionable injury. Whether or not the particular zoning is in the best interest of the orderly development of the community is a determination to be made by the legislative body—the Winnebago County Board of Supervisors.

█ The plaintiffs do not claim a right to represent or speak for the people of the entire county. They claim a special interest in the zoning in question because of their particular properties which are located in a rather small, specified area in the City of Rockford and within the county. The factual allegations of their complaint, however, do not warrant concluding that they have suffered any special damage from the change of zoning, which differed from that of the general public, other than that resulting from the potential increased competition. We deem this insufficient to accord them standing to maintain this suit. See: Garner v. County of DuPage, supra, 160.

Also, we believe that the ordinance received the three-fourths vote required by section 5 of the Zoning Act. (Ill Rev Stats 1967, c 34, par 3158.)

It was undisputed that the Winnebago County Board of Supervisors was comprised of 39 members; that member Dennis W. Johnson resigned from the Board; that his resignation was officially accepted; and that 38 members of the Board voted on the ordinance in question on April 24, 1968, at a time when no successor supervisor had been elected or appointed to replace member Johnson.

The plaintiffs contend that since the ordinance received only 29 votes, it failed passage; and it is the defendants' theory that only 29 votes were required for the adoption of the ordinance, since a three-fourths vote of the 38 members then holding office was 28½ votes.

The plaintiffs urge that under the provisions of section 9 of the Township Organization Act (Ill Rev Stats 1967, c 139, par 91) that township supervisors "shall hold their offices for one year, and until others are elected or appointed in their places and are qualified." The defendants contend that sections 25–1 and 25–2 of the Election Code (Ill Rev Stats 1967, c 46, pars 25–1 and 25–2) are determinative of this issue. They provide that resignations of elective officers "shall be made to the officer, court or board authorized by law to fill a vacancy in such office by appointment, or to order an election to fill such vacancy"; and that such office shall become vacant by the resignation of the officer. Both the plaintiffs and the defendants have cited Illinois cases to sustain their respective positions, and the decisions are not entirely harmonious.

■ ■ These two statutes are in pari-materia and must be construed together to determine the intent of the legislature. People ex rel. Krapf v. Hayes, 13 Ill2d 143, 147, 148 NE2d 428 (1958). The Constitution of Illinois contains no express denial of the right of a public officer to resign, although it does provide that all officers shall hold their offices until their successors shall have qualified. These provisions mark the intention and policy of the law to be that the public convenience shall not suffer from a vacancy. It is the public convenience, not the private ends of some particular individual or group, which is to be served. People v. Barrett, 365 Ill 73, 77, 5 NE2d 453 (1936).

In Barrett, a Circuit Judge resigned in December, 1935, by presenting his written resignation to the Governor, which was accepted, and both the resignation and acceptance were filed in the office of the Secretary of State. On January 1, 1936, the Judge entered private practice and ceased to act as circuit judge. His reporter performed no official duties after that date, but held herself ready to do so. She claimed a right to receive her salary inasmuch as the Constitution provided, with reference to

the office of the circuit judge, that "all officers provided for in this article shall hold their offices until their successors shall be qualified, . . . ." (Article VI, § 32, Constitution of 1870.)

The wording of the Constitution is similar to that of section 9 of the Township Organization Act, and the court in Barrett, at pages 78 and 79 stated:

"Not only has the right to resign a public office long been recognized and accepted by common consent in this State, but it has been fully recognized by statute and by decisions of this court. It is provided by paragraph 137 of chapter 46 (State Bar Stat 1935, p 1469), that resignations by elective officers shall be made to the officer, court or county board authorized by law to fill a vacancy in such office by appointment or to order an election to fill such vacancy. The next succeeding paragraph provides that every elective office shall become vacant on the happening of eight specified events: . . . (2) his resignation; . . . ."

And, at pages 82 and 83, the court further stated:

"We believe that the cases can all, or nearly all, be harmonized while retaining the necessary principles involved, by giving due consideration and weight to what was intended to be the fundamental holding of our own court in People v. Supervisor of Barnett Township, supra. The language of that opinion indicates the basic holding of the court, which was that one may not evade a duty to a creditor or cause the public convenience to suffer by a voluntary resignation of public office. It would be a narrow and obviously impossible construction of the constitution to say that a public office may in no case become vacant until a successor to the officer is elected and qualified. Not even the constitution can prevent

death from vacating a public office. Neither do we think it can prevent such a vacancy following upon the insanity of the officeholder, his abandonment of the office and leaving the jurisdiction of the court, nor by his refusal to perform its duties and acceptance of inconsistent employment, except where the public interest or the rights of creditors may make it necessary that he be compelled by mandamus to perform the duties imposed upon him and assumed by him. The most that the constitutional provision can accomplish is to bridge the gap between successive officeholders and so far as possible protect the public convenience against any hiatus in the occupancy of a public office."

In People ex rel. Adamowski v. Kerner, 19 Ill2d 506, 167 NE2d 555 (1960), at pages 511 and 512, the court stated:

"Paragraph 25-2 of the Election Code clearly states that every elective office shall become vacant before the expiration of the term of such office upon the resignation of the incumbent. It does not require that such resignation be accepted. . . .

"Therefore, the resignation of an officer effective either forthwith or at a future date may not be withdrawn after such resignation is received by or filed with the officer authorized by law to fill such vacancy or to call an election for such purpose. Cf. People ex rel. McCarthy v. Barrett, 365 Ill 73; Pace v. People ex rel. McMeen, 50 Ill 432.

"In the event the right of creditors or public convenience require that there should be no vacancy in the office from which the incumbent seeks to resign, then affirmative action is required of the officer receiving the resignation in order to preclude it from becoming effective. Absent such affirmative action, the resignation becomes effective either forthwith or

upon the future date specified therein, as the case may be, when received by or filed with such officer, and it cannot be withdrawn."

■ In the case at bar, neither the rights of creditors nor public convenience were involved in any way to require that there should be no vacancy in the office of supervisor. Thus, the resignation was effective upon receipt by the Town Clerk and the membership in the Board was reduced to 38 members. The affirmative vote of 29 members comprised a three-fourths vote of the then 38-member Board.

For the reasons stated herein, the judgment of the trial court dismissing the complaint is affirmed.

Judgment affirmed.

ABRAHAMSON and SEIDENFELD, JJ., concur.