OPINION OF THE COURT
Kaye, J.
 A property holder in nearby proximity to premises *410 that are the subject of a zoning determination may have standing to seek judicial review without pleading and proving special damage, because adverse effect or aggrievement can be inferred from the proximity. Where, however, petitioner’s only substantiated objection is the threat of increased business competition — an interest not within the "zone of interest” protected by the zoning laws — even a close neighbor lacks standing to contest a zoning determination.

Sun-Brite Car Wash

In March 1984 respondents Gulf Oil Corp. and Fenley & Nichol Co. (Gulf) applied for a permit to erect a prefabricated metal automatic car wash on their property, which is used as a gas station — a nonconforming legal use. The automatic car wash was to replace a self-service car wash. The Building Department denied the application both because the proposed use was not permitted in the district and because the proposed structure did not comply with the building code, which prohibited unprotected metal structures in business and industrial zones. Gulf appealed the denial by applying to respondent Board of Zoning and Appeals for a use variance. The application was first forwarded to the Planning Commission, and after the plan was amended in accordance with its recommendations, the Board held a public hearing — consisting largely of evidence of competitive business losses that would result from the variance — and granted the variance.
Petitioner, Sun-Brite Car Wash — the long-term lessee of a car wash across the street from Gulf, also a nonconforming legal use — commenced this article 78 proceeding to annul the Board’s determination. Supreme Court found, first, that SunBrite, as a lessee in the immediate vicinity of the affected property, was as a matter of law "aggrieved” within the meaning of Town Law § 267 (7), and therefore had the requisite standing. Second, on the merits, the court vacated the Board’s decision, holding that upon review of the administrative record applicants had failed to demonstrate that the property was unsuitable for permitted uses or could not yield a reasonable return. The Appellate Division reversed, concluding that Sun-Brite lacked standing to bring this article 78 proceeding because its only substantiated objection to the variance was that it would result in competition. We granted leave to appeal and now affirm.

*411
Allen Avionics

Defendant Universal Broadcasting purchased a portion of the subject property from defendant Incorporated Village of Mineóla. The Village Board of Trustees approved the transaction, stipulating that the height of the radio tower Universal proposed to build would be limited to 250 feet, that the tower was permissible on the property — located in the Village’s "M-l Light Manufacturing Zone”[1] — and that the Village would issue a building permit. In August 1982, some two years after the purchase, Universal applied for a building permit, which was issued on October 5, 1983 following an engineer’s report but without a public hearing. That very day the Village Board of Trustees temporarily suspended the permit pending investigation of the safety of the tower. After the Environmental Protection Agency and the Department of Health issued opinions that the operation of a radio tower presented no undue health risk, the permit was reissued. Plaintiffs — owners of properties adjacent to the parcel[2] — thereafter commenced this action seeking to enjoin construction, maintenance and use of the tower, alleging that it was dangerous to public health or safety, and to plaintiffs’ properties, and further that radiation emitted from the tower would interfere with Allen’s business of manufacturing electric parts, and thus excluded from use in an M-l district.
Following a trial on the merits, including extensive engineering testimony, Supreme Court held that the construction of a 250-foot radio tower was authorized by and conformed to the Mineóla Village Code, and required no zoning change or public hearing. Alternatively, the court concluded that, even if the tower was not a permitted use, plaintiffs lacked standing to maintain the injunction action because they failed to establish that the tower threatened imminent injury to their property or business, or would cause a genuine change to the community, or would increase community hazards. The court *412 termed the claim of possible collapse "highly speculative and unsupported by the evidence,” adding that plaintiffs "completely failed to establish that their real and/or personal property will be jeopardized by the construction of the tower, or that their employees will be placed in serious peril, or that radiation emitted from the tower will interfere with its manufacturing business.” The Appellate Division affirmed on the basis that plaintiffs lacked standing. We granted leave to appeal and, in this appeal as well, affirm the Appellate Division order, but on a different rationale.
Discussion
Central to both appeals is the issue whether the petitioning parties have standing to assert their claims.
Zoning ordinances are a proper exercise of the police power because they are enacted to protect the health, safety and welfare of the community. In general, a person acquiring premises in a restricted zone may reasonably rely both on the promise the ordinance itself provides and on the fact that the municipality will enforce the ordinance, thereby protecting against diminution in the value of the property by nonpermitted uses. If the municipality fails to enforce its zoning laws, or acts arbitrarily or capriciously in varying the application of the ordinance, and a person is thereby aggrieved, it may seek relief in its own right. As in any other challenge to administrative action, a "petitioner need only show that the administrative action will in fact have a harmful effect on [it] and that the interest asserted is arguably within the zone of interest to be protected by the statute.” (Matter of Dairylea Coop, v Walkley, 38 NY2d 6, 9; see also, Matter of Dental Socy. v Carey, 61 NY2d 330, 334.)
Whether in the form of an article 78 proceeding for review of an administrative determination or an action for an injunction, challenges to zoning determinations may only be made by "aggrieved” persons (see, Town Law § 267 [7]; Little Joseph Realty v Town of Babylon, 41 NY2d 738, 741; 3 Rathkopf, Zoning and Planning § 43.01). By the same token, an aggrieved person may have standing to seek judicial review even where a statute vests exclusive power to enjoin zoning violations in local authorities (see, e.g., Village Law § 7-714), because such a person pursues "more than a civic interest in law enforcement; he is vindicating a discrete, separate identifiable *413 interest of his own” (Little Joseph Realty v Town of Babylon, supra, at 742).
While the immediate parties to an administrative proceeding are aggrieved persons who may seek judicial review, it is less clear what other persons are aggrieved in a sense that entitles them to seek review. Aggrievement warranting judicial review requires a threshold showing that a person has been adversely affected by the activities of defendants (or respondents), or — put another way — that it has sustained special damage, different in kind and degree from the community generally (see, Matter of Douglaston Civic Assn. v Galvin, 36 NY2d 1, 5; Cord Meyer Dev. Co. v Bell Bay Drugs, 20 NY2d 211). Traditionally, this has meant that injury in fact must be pleaded and proved.
Standing principles, which are in the end matters of policy, should not be heavy-handed; in zoning litigation in particular, it is desirable that land use disputes be resolved on their own merits rather than by preclusive, restrictive standing rules (see, Matter of Douglaston Civic Assn. v Galvin, supra, at 6). Because the welfare of the entire community is involved when enforcement of a zoning law is at stake, there is much to be said for permitting judicial review at the request of any citizen, resident or taxpayer; this idea finds support in the provision for public notice of a hearing. But we also recognize that permitting everyone to seek review could work against the welfare of the community by proliferating litigation, especially at the instance of special interest groups, and by unduly delaying final dispositions (see, 4 Anderson, American Law of Zoning § 27.09 [3d ed]; but see, Ayer, Primitive Law of Standing in Land Use Disputes: Some Notes From a Dark Continent, 55 Iowa L Rev 344, 360).
While something more than the interest of the public at large is required to entitle a person to seek judicial review— the petitioning party must have a legally cognizable interest that is or will be affected by the zoning determination — proof of special damage or in-fact injury is not required in every instance to establish that the value or enjoyment of one’s property is adversely affected (see, Matter of Douglaston Civic Assn. v Galvin, 36 NY2d 1, supra; Little Joseph Realty v Town of Babylon, 41 NY2d 738, supra). The fact that a person received, or would be entitled to receive, mandatory notice of an administrative hearing because it owns property adjacent or very close to the property in issue gives rise to a presump *414 tion of standing in a zoning case. But even in the absence of such notice it is reasonable to assume that, when the use is changed, a person with property located in the immediate vicinity of the subject property will be adversely affected in a way different from the community at large; loss of value of individual property may be presumed from depreciation of the character of the immediate neighborhood. Thus, an allegation of close proximity alone may give rise to an inference of damage or injury that enables a nearby owner to challenge a zoning board decision without proof of actual injury (see, Matter of Prudco Realty Corp. v Palermo, 93 AD2d 837, affd., on other grounds 60 NY2d 656; Matter of Marasco v Luney, 99 AD2d 492, Iv denied 63 NY2d 605; see also, 4 Anderson, American Law of Zoning § 27.18 [3d ed]; 3 Rathkopf, Zoning and Planning § 43.04).
The status of neighbor does not, however, automatically provide the entitlement, or admission ticket, to judicial review in every instance. Petitioner, for example, may be so far from the subject property that the effect of the proposed change is no different from that suffered by the public generally (cf., Brechner v Incorporated Vil. of Lake Success, 23 Misc 2d 159, 161 [Meyer, J.]; 3 Rathkopf, op. cit. § 43.04; ALI Model Land Development Code §§9-103, 9-104 [Proposed Official Draft 1975] [property owner within 500 feet has standing]). Moreover, petitioner must also satisfy the other half of the test for standing to seek judicial review of administrative action — that "the interest asserted is arguably within the zone of interest to be protected by the statute.” (Matter of Dairylea Coop. v Walkley, 38 NY2d 6, 9, supra.) Petitioner’s status may be challenged on the ground that the interest it is asserting is not arguably within the "zone of interest” which the regulation is designed to protect. In such instances, even where petitioner’s premises are physically close to the subject property, an ad hoc determination may be required as to whether a particular petitioner itself has a legally protectable interest so as to confer standing.
We next turn to application of these principles to the facts presented. In both cases before us, the petitioning parties have asserted standing based on close physical proximity, and standing has been disputed by respondents.
Sun-Brite’s standing is first of all challenged because it is a lessee. A leaseholder may, however, have the same standing to challenge municipal zoning action as the owner. A change *415 in contiguous or closely proximate property obviously can as readily affect the value and enjoyment of a leasehold as the underlying ownership interest (see, Lavere v Board of Zoning Appeals, 39 AD2d 639, affd no opn 33 NY2d 873 [month-to-month tenant]; Daub v Popkin, 5 AD2d 283, affd no opn 4 NY2d 1024; Community Planning Bd. No. 2 v Board of Stds. & Appeals, 43 AD2d 670; 4 Anderson, American Law of Zoning § 27.13 [3d ed]). Sun-Brite’s status as a tenant is therefore not an impediment to its right to maintain this proceeding.
However, Sun-Brite lacks standing to seek judicial review because, as established in the administrative proceeding, its only substantiated objection was the threat of increased business competition, which is not an interest protected by the zoning laws (see, Matter of Dairylea Coop. v Walkley, 38 NY2d 6, 9, supra; Cord Meyer Dev. Co. v Bell Bay Drugs, 20 NY2d, at 211, supra; Matter of Paolangeli v Stevens, 19 AD2d 763; see also, 4 Anderson, American Law of Zoning § 27.17 [3d ed]; 3 Rathkopf, Zoning and Planning § 43.06). Individual property owners "have no vested rights to monopolies created by zoning laws or ordinances. These are not enforced at the instance of one competitor in order to prevent or reduce competition.” (Cord Meyer Dev. Co. v Bell Bay Drugs, 20 NY2d, supra, at 215.) Thus, by virtue of the administrative action "the land owner has lost nothing and cannot be said to have been aggrieved.” (3 Rathkopf, Zoning and Planning § 43.06, at 43-34.) As we made clear in Cord Meyer (20 NY2d, supra, at 218), the fact that petitioner is a competitor would not alone deprive it of standing if there were other injury, such as depreciation in the value of the property arising from the manner in which the use is conducted (see also, 3 Rathkopf, Zoning & Planning § 43.06, at 43-35). Here, however, the administrative record reveals that the only substantiated objection to the variance was the claim that it would result in increased competition. Zoning laws do not exist to insure limited business competition. Therefore, as the Appellate Division correctly concluded, petitioner lacked standing to maintain this proceeding.[3]
In Allen, we affirm the Appellate Division order but we do so on a different ground. As adjoining land owners, plaintiffs are members of a group presumptively affected by the *416 change on neighboring property and therefore technically have standing to maintain this action. Indeed, the Village ordinance recognizes plaintiffs as property owners who must be given notice prior to a hearing on an application for a conditional or special use,[4] and on a zoning change application.[5]
Having the admission ticket to judicial review is not, however, a guarantee of success on the merits. The Appellate Division order must be affirmed because, in the words of the Special Term Judge, plaintiffs "have not established the major elements of their causes of action set forth in the complaint.” We agree with the Trial Judge on the legal proposition that the tower is clearly within the broad definition contained in the Mineóla Village Code, without limitation as to height and subject only to approval by the Board of Trustees. Moreover, there is an affirmed finding, amply supported by the record, that plaintiffs are threatened with no irreparable injury. While observing that it was unnecessary to reach the merits of plaintiffs’ claims, the Appellate Division also stated that it had reviewed the entire record, including the expert testimony, and concluded that the evidence supported Special Term’s finding that plaintiffs failed to establish that construction of the tower would result in any imminent threat of irreparable injury or result in diminution of the value of plaintiff’s property. In these circumstances, there is no cause to remit the matter to the Appellate Division for a determination on the merits.
*417 Accordingly, in each case the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Titone, Hancock, Jr., and Bellacosa concur; Judge Alexander taking no part.
In each case: Order affirmed, with costs.

.The Mineóla Village Code provides that metal buildings "shall be permissible in Business M-l and M-2 Districts, subject to the approval of the Board of Trustees.” (Art XVII, § 60-109.) Section 60-2 of the Code defines building to include "the word ’structure’ [and] a structure shall be deemed to be any combination of materials forming any construction and shall include, among other things * * * radio towers.”

.Plaintiffs own property at 224 East Second Street, Mineóla, within the M-l Light Manufacturing Zone, and 255 East Second Street, within the M-2 Industrial District. Universal’s property is located at 260 East Second Street, within the M-l Light Manufacturing Zone.

.We need not, and do not, reach the question whether Sun-Brite lacks standing because its nonconforming use does not place it within the "zone of interest” protected by the statute.

.Article XXIII, § 60-149.1 of the Mineóla Village Code provides: "(3) Before an application for a conditional or special use may be heard by the Board of Zoning and Appeals, a complete and accurate list of the names and addresses of the owners of all the lands within a radius of two hundred (200) feet of the property affected by such application as appears on the latest completed assessment roll of the County of Nassau shall be submitted simultaneously with the application. The applicant shall send, by registered mail, to each owner shown on said list, not less than ten (10) nor more than twenty (20) days before the date set for a hearing upon this application, a notice addressed to such owners signed by the applicant, generally identifying the property affected thereby, and setting forth the use requested and the date, hour and place fixed by the Board of Zoning and Appeals for the hearing thereon.”

.Article XXIV of the Code incorporates the Village Law, which in section 7-708 (1) provides that "owners of twenty per centum or more of the land immediately adjacent extending one hundred feet therefrom, or by the owners of twenty per centum or more of the land directly opposite thereto, extending one hundred feet from the street frontage of such opposite land” are entitled to protest zoning changes.