**EARTH MOVERS OF FAIRBANKS, INC., Appellant,**

v.

**FAIRBANKS NORTH STAR BOROUGH, Appellee.**

No. S–5186.

Supreme Court of Alaska.

Dec. 17, 1993.

Rehearing Denied Jan. 10, 1994.

Joseph L. Paskvan, Hoppner & Paskvan, P.C., Fairbanks, for appellant.

Mark Andrews, Asst. Borough Atty., Fairbanks, for appellee.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

The Fairbanks North Star Borough Department of Community Planning (Department) determined that Richard Wagner possessed grandfather rights to extract gravel from a pit he owned in the Borough. In this case, Earth Movers of Fairbanks, Inc., (Earth Movers) appeals the superior court's holding that Earth Movers did not have standing to challenge that determination.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The property at issue is located a few miles north of Fairbanks, off Farmers Loop Road. The property was used from 1962 to 1965 as a source of gravel for construction of Farmers Loop Road. In 1965, the property was sold to the current owner, Richard Wagner.

In October 1975, the property was rezoned from Unrestricted Use to Rural Estate 2. Use of land as a gravel pit is prohibited in a Rural Estate 2 zone. However, the 1975 rezoning granted grandfather rights for non-conforming uses which were in existence at the time of the zoning changes.[1] The ordinance in effect at the time provided that nonconforming uses, such as a gravel pit, could continue "provided any such nonconforming use which is discontinued for a period of twelve months may not be re-established." Fairbanks North Star Borough Ordinance (FNSBO) 18.40.010 (1975).[2]

Wagner, after receiving notice in 1988 that the state was upgrading Farmers Loop Road, inquired of the Borough whether he could extract gravel from the property for the project. The Department decided that Wagner had grandfather rights to use the pit. Earth Movers objected to the Department's decision.[3] Wagner filed a response, challenging Earth Movers' standing to dispute the Department's decision.

Earth Movers' appeal was heard by the Borough Assembly, sitting as a Board of Adjustment. The Board of Adjustment upheld the decision of the Department,[4] and found that Earth Movers had no standing to challenge the previous decision. Earth Movers appealed to the superior court, which held that Earth Movers had no standing and dismissed the appeal. Earth Movers appeals.

## II. DISCUSSION

A. Does Earth Movers Have Standing to Challenge the Board's Decision?[5]

1. Applicable Zoning Statutes and Ordinances

In Alaska, "[t]he concept of standing has been interpreted broadly." *Trustees for*

---

1. A nonconforming use has been defined as a use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance, although it does not comply with the zoning restrictions applicable to the area in which it is situated. Such a use has also been described as a vested property right that zoning ordinances generally may not abrogate. 83 Am.Jur.2d *Zoning and Planning* § 624 (1992).

2. The ordinance was amended in 1988 to require that grandfather rights were to be discontinued if the nonconforming use ceased for thirty-six months, rather than twelve months. FNSBO 18.56.030(B)(2).

3. Earth Movers claimed that, as the owner of gravel pit rights within the Borough, it would be adversely affected by the Department's mistaken allowance of Wagner's nonconforming use.

4. In order to maintain the gravel pit as a nonconforming use, ordinances clearly required Wagner to have used the pit *commercially* within the specified time frames. Earth Movers argues strenuously, and the Borough concedes, that in affirming the Department, the Board of Adjustment misinterpreted the law. The Board of Adjustment issued a finding of fact stating "[t]he Borough zoning code for the period 1975–1988 did not require commercial [activity]...." Although it is clear that the Board of Adjustment was wrong in not requiring a showing of commercial activity, the existence of the wrong does not in itself give Earth Movers standing. Earth Movers must still show that it has standing to challenge that incorrect finding.

5. Where the superior court acts as an intermediate appellate court, this court owes no deference to its decision, but, "[i]nstead ... independently scrutinize[s] directly the merits of the administrative determination." *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987). In order to determine if Earth Movers has standing, we must interpret the applicable statutes and ordinance. Thus we address questions of law, and the appropriate stan-

*Alaska v. State,* 736 P.2d 324, 327 (Alaska 1987). "The basic requirement for standing in Alaska is adversity." *Id.* (citing *Moore v. State,* 553 P.2d 8, 24 n. 25 (Alaska 1976)). Thus, we have held that "[s]tanding questions are limited to whether the litigant is a 'proper party to request an adjudication of a particular issue.'" *Moore,* 553 P.2d at 24 n. 25 (quoting *Flast v. Cohen,* 392 U.S. 83, 100–01, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968)). Both parties vigorously argue whether Earth Movers is a proper party to challenge the Department's decision.

■ General Alaska standing law is not applicable in this case. In the area of land use law, the legislature has chosen to limit standing by statute. Therefore, we must look to the applicable statutes and ordinance for guidance in determining whether Earth Movers has standing.

■ The statutes and ordinance provide for two levels of review, initially to a board and then to the superior court. At level one, AS 29.40.050(a) provides in part:

> **Appeals from administrative decisions.** (a) By ordinance the assembly shall provide for an appeal from an administrative decision of a municipal employee, board, or commission made in the enforcement, administration, or application of a land use regulation adopted under this chapter. The assembly may provide for an appeal to a court, hearing officer, board of adjustment, or other body.

Pursuant to this statute, the Borough enacted an ordinance providing:

> *Appeals.* A. Initiation of Appeal. Decisions may be appealed to the appeals officer or the board of adjustment by:
>
> . . . .
>
> 3. Any person *adversely affected* by a decision or determination made by the director of the department of community planning in the enforcement of this ordinance. . . .

dard of review is *de novo. Langdon v. Champion,* 745 P.2d 1371, 1372 n. 2 (Alaska 1987).

**6.** In general, standing in zoning cases has been more restrictive than general standing principles, primarily in order to prevent excessive litigation and undue delay of final dispositions. 83 Am.

FNSBO 18.54.070(A)(3) (1992) (emphasis added). Thus, in order to appeal to the Board of Adjustment from the Department's determination that Wagner had grandfather rights, Earth Movers must be a party "adversely affected."

At level two, AS 29.40.060 provides:

> **Judicial review.** (a) The assembly shall provide by ordinance for an appeal by a municipal officer or person *aggrieved* from a decision of a hearing officer, board of adjustment, or other body to the superior court.

(Emphasis added.) In accordance with this statute, the Borough ordinance provides:

> F. Judicial Review. Either the appellant or appellee [sic] may appeal the decision of the appeals officer or the board of adjustment to the superior court. Appeals shall be made in accordance with the Alaska Rules of Civil Procedure.

FNSBO 18.54.070(F). Reading the ordinance in conjunction with AS 29.40.060, in order to appeal the Board of Adjustment's determination, Earth Movers must be a party "aggrieved." Thus, in the area of zoning we are faced with apparently different standing requirements at different levels of appeal: a party "adversely affected" and a party "aggrieved."

We resolve this conflict by interpreting the phrase "adversely affected" as used in the ordinance to mean the same as the word "aggrieved" as used in the statute. We do so because of the context of the statutes and ordinance—zoning. "The zoning enabling acts commonly authorize judicial review of decisions of a board of adjustment at the instance of 'a person or persons jointly or severally aggrieved' by the decision in question." 83 Am.Jur.2d *Zoning and Planning* § 1027 (1992). The legislature chose to provide review for those "aggrieved," indicating that it follows the general practice of review in zoning cases.[6]

Jur.2d *Zoning and Planning* § 1026 (1992). As one court noted,

> [a]llowing the threat of increased competition to confer standing could open a new and inappropriate battleground for business competition: the planning and zoning boards of each

### 2. *Is Earth Movers a "Person Aggrieved"?*

In general, the requirement of "aggrievement" in zoning cases is not considered to include the threat of potential business competition.

> The prevention of competition is not a proper element of zoning. A person whose sole interest for objecting to the zoning board's action is to prevent competition with his business is not a person aggrieved. It is not the function of ordinances to provide economic protection for existing enterprises, and the fact that such businesses may suffer reduced incomes or that the property would depreciate in value will not confer standing on these owners....

83 Am.Jur.2d *Zoning and Planning* § 1034 (1992) (footnote omitted).[7] In zoning cases, the vast majority of jurisdictions do not allow standing solely on the basis of potential business competition.[8] Courts generally rely on two theories for holding that potential business competition is not sufficient to confer standing.

First, courts point out that competitors do not fall within the "zone of interest" that zoning regulations protect. The Supreme Judicial Court of Massachusetts discussed this rationale extensively in *Circle Lounge & Grille, Inc. v. Board of Appeal*, 324 Mass. 427, 86 N.E.2d 920 (1949). The court noted that the purpose of zoning was not to protect business from competition; rather

> [t]he primary purpose of zoning with reference to land use is the preservation in the public interest of certain neighborhoods against uses which are believed to be deleterious to such neighborhoods.... The residence zone was designed to protect residence against business. It was not designed to protect business against business.

*Id.* 86 N.E.2d at 923. Under this rationale, proper parties to challenge the Board's decision granting Wagner grandfather rights would include the neighbors directly affected by the increased commercial activity in their neighborhood or others whose affected interests relate to the purpose of the zoning ordinance. *See also Swain v. County of Winnebago*, 111 Ill.App.2d 458, 250 N.E.2d 439, 444 (1969) ("It is not the function of the county

---

municipality in the State. This battleground would unduly tax the resources of our municipalities as well as impair our commitment to a free enterprise system.
*Paramus Multiplex Corp. v. Hartz Mountain Indus., Inc.*, 564 A.2d 146, 149 (N.J.Super.1987).

**7.** *See also* 101A C.J.S. *Zoning & Land Planning* § 267(b) (1979) ("Generally, a person is not 'aggrieved' merely because the permit, variance, exception, or rezoning will increase competition in the business of the party seeking review...."); 3 Arden H. Rathkopf & Daren A. Rathkopf, *The Law of Zoning and Planning* § 43.07, at 43–53 (1992) (" 'Aggrievement' sufficient to confer standing to challenge rezoning, or the grant of a variance, or a special permit, has traditionally been denied where its basis has been that the business competition which would result from the zoning action complained of would adversely affect the interests of the complainant.").

**8.** *See Gregorio v. Zoning Bd. of Appeals*, 155 Conn. 422, 232 A.2d 330, 333 (1967) ("The fact that the proposed gasoline station would result in competition harmful to the plaintiff's business would not be sufficient to qualify the plaintiff as an aggrieved person."); *Swain v. County of Winnebago*, 111 Ill.App.2d 458, 250 N.E.2d 439, 444 (1969) ("Neither the fact that parties may suffer reduced incomes or be put out of business by

more vigorous or appealing competition ... give rise to a standing to sue."); *Lucky Stores, Inc. v. Board of Appeals*, 270 Md. 513, 312 A.2d 758, 766 (1973) ("[A] person whose sole interest for objecting to the Zoning Board's action is to prevent competition with his established business is not a person aggrieved."); *Circle Lounge & Grille, Inc. v. Board of Appeal*, 324 Mass. 427, 86 N.E.2d 920, 922 (1949) ("We cannot believe that a person is aggrieved ... merely because a variance, even if improvidently granted, will increase competition in business."); *Redstone v. Board of Appeals*, 11 Mass.App. 383, 416 N.E.2d 543, 544 (1981) ("A party is not, however, aggrieved ... because the zoning relief granted may result in business competition."); *Copple v. City of Lincoln*, 210 Neb. 504, 315 N.W.2d 628, 630 (1982) ("An increase in business competition is not sufficient to confer standing to challenge a change of zone."); *Paramus Multiplex Corp. v. Hartz Mountain Indus., Inc.*, 236 N.J.Super. 104, 564 A.2d 146, 148 (1987) ("This court holds that increased competition does not ... of itself confer standing."); *Sun–Brite Car Wash, Inc. v. Board of Zoning & Appeals*, 69 N.Y.2d 406, 515 N.Y.S.2d 418, 422, 508 N.E.2d 130, 134 (1987) ("Sun–Brite lacks standing to seek judicial review because ... its only substantiated objection was the threat of increased business competition, which is not an interest protected by the zoning laws.").

zoning ordinances to provide economic protection for existing businesses."); *Sun–Brite Car Wash, Inc. v. Board of Zoning & Appeals,* 69 N.Y.2d 406, 515 N.Y.S.2d 418, 423, 508 N.E.2d 130, 135 (1987) ("Zoning laws do not exist to insure limited business competition.").

The second rationale courts use to support denying business competitors standing is a "vested rights" argument. Courts reason that "no person has a vested right to engage in business without competition.... Never having been possessed of a right to conduct a business free of competition, the landowner has lost nothing and cannot be said to have been aggrieved." 3 Arden H. Rathkopf & Daren A. Rathkopf, *The Law of Zoning and Planning* § 43.07, at 43–53 (1992). The Appellate Court of Illinois noted that "[a] person can have no vested or special property right in either the monopoly or competitive advantage accorded by zoning restrictions at a given time." *Swain,* 250 N.E.2d at 444.

We think both theories have merit. In the area of land use law, we thus adopt the majority rule and deny standing to a business competitor whose only alleged injury results from competition.[9] Earth Movers argues that "[n]o one other than those with interests in lawfully operated gravel pits have greater interests in preserving the laws of gravel pits than those similarly situated to Earth Movers and Earth Movers itself." In terms of Earth Movers' interest in limiting competition in gravel sales, this may be correct. That interest is, however, irrelevant because it is not an interest meant to be protected by the zoning ordinance.

### III. *CONCLUSION*

We interpret the applicable statutes and ordinance to require that a person be "aggrieved" in order to appeal a decision by a zoning board. We adopt the majority interpretation of "aggrieved" to deny standing in land use cases to a business competitor whose only alleged injury is potential increased competition. Therefore we AFFIRM the decision of the superior court which affirmed the decision of the Board of

Adjustment denying Earth Movers standing to challenge the Department's holding.

9. Of course, a business competitor who can show other injury, such as a deleterious effect on traffic patterns, parking, etc., should not be denied standing simply because he is also a competitor.