[622 NYS2d 339]

In the Matter of EDGAR KING, Individually and as Supervisor of the Town of Northumberland, et al., Appellants, v COUNTY OF SARATOGA INDUSTRIAL DEVELOPMENT AGENCY et al., Respondents.

Third Department, January 26, 1995

**APPEARANCES OF COUNSEL**

*Edward Lindner,* Saratoga Springs, for appellants.

*Lemery & Reid,* Glens Falls *(Jack R. Lebowitz* and *Theresa M. Skaine* of counsel), for County of Saratoga Industrial Development Agency, respondent.

*Michael T. Wallender,* Albany, and *Nicholas DeBenedictis* for Scott and Finch Landfill Partnership, respondent.

*Dennis C. Vacco, Attorney-General,* Albany *(Carol S. Knox, Peter H. Schiff* and *Kathleen Liston Morrison* of counsel), for Thomas C. Jorling, respondent.

### OPINION OF THE COURT

PETERS, J.

This proceeding concerns the siting of a paper sludge landfill on a 232-acre site in the Town of Northumberland, Saratoga County, owned by respondent Scott and Finch Landfill Partnership (hereinafter the partnership). The partnership is comprised of two large paper companies: Scott Paper Company, which manufactures paper products at its plant in Washington County and Finch Pruyn & Company Inc., which manufactures paper products at its plant in Warren County. The partnership was formed in 1987 when, due to standards newly promulgated by the Department of Environmental Conservation (hereinafter DEC), it became apparent to both paper companies that they shared a common need to build a new lined landfill to be used for the disposal of their paper sludge.

In April 1989, the partnership entered into a contract to purchase the 232-acre parcel and thereafter engaged in hydrogeologic testing to establish its qualifications for a landfill. In April 1990, the partnership submitted a planned unit development (hereinafter PUD) application to the Town for the paper sludge facility to be located on such land. At that time, the partnership intended to finance the construction and operation of such facility through private sources. Upon receipt of the application, the Town initiated the requisite environmental review pursuant to the State Environmental Quality Review Act (ECL art 8; hereinafter SEQRA). In June 1990, the Town designated itself as the appropriate "lead agency" and determined that the project had significant environmental impacts requiring the preparation of a draft environmental impact statement (hereinafter DEIS). In October 1990, the partnership resubmitted the DEIS, making the changes and additions required by the Town. In December 1990, the DEIS was determined by the Town to be complete and it directed the filing of a notice of completion pursuant to 6 NYCRR 617.10. Public hearings were conducted in February 1991 pursuant to 6 NYCRR 617.8 (d), and in July 1991 the Town

Attorney notified the partnership that the public comment period would close in July 1991 and that it was to file its final environmental impact statement (hereinafter FEIS) on or before September 6, 1991. The Town intended to vote upon the PUD application at the October 1991 meeting. The FEIS was never submitted and, on or about September 30, 1991, the partnership notified the Town that it was withdrawing its application. Accordingly, no vote was ever taken.

In September 1991, the partnership applied to respondent Saratoga County Industrial Development Agency (hereinafter SCIDA) for $18,000,000 in financing and other assistance potentially available to qualified industrial development projects as defined in the State Industrial Development Agency Act (see, General Municipal Law art 18-A). The application before SCIDA was accompanied by a DEIS which essentially mirrored that which was previously submitted to the Town, with the exception that it included a request that SCIDA establish itself as the "lead agency" for SEQRA purposes, stated an intent to utilize a double-liner system, and provided for access to the facility via easements from consenting landowners rather than through Town property. Responses to comments made in the public hearings previously conducted were included.

SCIDA determined that the partnership's project was an " '[i]ndustrial pollution control facility' " (General Municipal Law § 854 [8]) and that it qualified for the funds earmarked for the development of industrial development projects (see, General Municipal Law § 852). In November 1991, SCIDA passed an "inducement resolution" for the project, indicating that it would further entertain the application subject to a showing of compliance with all SEQRA requirements and a demonstration that the proposed facility would be environmentally compatible.

In November 1991, SCIDA named itself the "lead agency" for the project, retained an engineering firm to provide independent technical advice and assistance, and authorized its attorneys, inter alia, to begin the required SEQRA process of "agency coordination" (see, 6 NYCRR 617.6) to review the proposed DEIS. In December 1991, counsel for SCIDA contacted all agencies listed by the partnership as being potentially "involved" or "interested agencies" (see, 6 NYCRR 617.2 [t], [u]), with the requisite notification that SCIDA would be the "lead agency" for the coordinated agency review (see, 6

NYCRR 617.6 [b]). While DEC approved SCIDA's self-designation as "lead agency", the Town challenged such designation.

In January 1992, the Town filed a petition with respondent Commissioner of Environmental Conservation pursuant to 6 NYCRR 617.6 (e), which was opposed by the partnership and SCIDA. The Commissioner rejected the Town's application, determining that it was not qualified to be even an "involved agency" much less the "lead agency" because it had no discretionary approval authority over the project now that the access road over Town property had been changed (see, 6 NYCRR 617.2 [t]). Hence, as merely an "interested" agency (see, 6 NYCRR 617.2 [u]), the Commissioner determined that the Town could neither serve as the lead agency nor invoke the SEQRA agency dispute resolution procedures to challenge the designation of another agency.

Prior to the Commissioner's determination of lead agency status, the Town enacted Local Laws, 1992, No. 1 (eff Jan. 29, 1992; hereinafter the Local Law) which prescribed numerous technical standards for landfills which were more stringent than those required by DEC. The Local Law provided that the Town was to be designated as the "lead agency" whenever a landfill was proposed for development within its borders, together with a prohibition against the importation of any solid waste from outside the borders of the Town.

In April 1992, the DEIS was released for public review. Thereafter, Saratoga County announced its plans to site a County landfill upon the same parcel of land. SCIDA therefore required the partnership to prepare a supplemental DEIS (hereinafter SDEIS) to examine the potential cumulative impact of two landfills on adjoining sites. Following release of the SDEIS in July and August 1992, three public hearings were held by SCIDA which were attended by approximately 600 people. Pursuant to SEQRA procedure, engineering consultants and counsel summarized the public comments and provided draft responses thereto. After various revisions, on February 9, 1993 SCIDA adopted the FEIS and approved its issuance in March 1993. The three-volume FEIS included analysis of potential alternatives to the project which included the feasibility of a recycling and reuse facility, extending the life of the partnership's existing unlined landfill in Warren County or siting the project on alternate sites. The FEIS concluded that none of the possible alternatives to the project was feasible. In addition to the various environmental issues required to be addressed pursuant to 6 NYCRR 617.14 (f), the

FEIS further concluded that the Local Law was an attempt to prohibit the construction of landfills through its promulgation of an array of unachievable standards. According to the various engineering consultants, the Local Law would serve to preclude landfilling at the proposed project site and other likely sites which might comply with State DEC standards.

In April 1993, SCIDA approved the project. Its approval included the environmental analysis, project conditions and findings required by 6 NYCRR 617.9 and ECL 8-0109 (8), as well as its decision not to apply the requirements of the Local Law. In August 1993, petitioners commenced the instant litigation to review SCIDA's determination and nullify SCIDA's resolution naming itself the "lead agency" for the project, as well as find that the partnership is in violation of the Local Law. The Commissioner, the partnership and SCIDA each cross-moved for summary judgment. In March 1994, Supreme Court found, *inter alia,* that SCIDA was within its statutory powers both in approving the partnership's application and in declining to apply the Town's Local Law. Further, Supreme Court found that SCIDA had fully complied with all statutory requirements and directed that petitioner Edgar King, then Supervisor of the Town, be dropped from the instant matter in his individual capacity for lack of standing. Petitioners appeal.

■ Petitioners contend that Supreme Court erred when it determined that the Town's Local Law did not apply. We disagree. Pursuant to General Municipal Law § 858 (former [4]) and § 890-h, an industrial development agency such as SCIDA, when in the process of acquiring real estate to be used for "its corporate purposes", is required to "take into consideration the local zoning and planning regulations". Contrary to the recent amendment to General Municipal Law § 858 (former [4]) *(see,* L 1993, ch 356, § 6, eff Sept. 21, 1993) which expressly requires industrial development agencies to comply with the local zoning and planning regulations rather than merely to "consider" them, we find it clear that since such amendment did not predate SCIDA's review, the language employed by General Municipal Law § 858 (former [4]) and § 890-h merely required an industrial development agency to "consider" all local laws such as the Town's Local Law.

Supreme Court correctly determined that SCIDA took all aspects of the Local Law into consideration by its extensive discussion thereof and appropriately concluded that the project would not be compelled to meet its rigid requirements. We

further find that Supreme Court correctly determined that SCIDA's decision was in keeping with the Court of Appeals decision in *Matter of County of Monroe (City of Rochester)* (72 NY2d 338), where it was held that local land use requirements would presumptively apply unless a "balancing" of relevant interests was found to weigh against such application *(see, supra,* at 341). While a court is bound to engage in the evaluation of various factors, "none of which [are] controlling" *(Westhab, Inc. v Village of Elmsford,* 151 Misc 2d 1071, 1074), among the factors so weighed are " 'the nature and scope of the instrumentality seeking immunity, the kind of function or land use involved, the extent of the public interest to be served thereby, the effect local land use regulation would have upon the enterprise concerned and the impact upon legitimate local interests' " *(Matter of County of Monroe [City of Rochester], supra,* at 343, quoting *Rutgers State Univ. v Piluso,* 60 NJ 142, 153, 286 A2d 697, 702). Such additional factors include the "applicant's legislative grant of authority", project alternatives and intergovernmental participation and an opportunity to be heard *(Matter of County of Monroe [City of Rochester], supra,* at 343). Our review of SCIDA's balancing of the *Monroe* factors reveals that SCIDA, as a County agency whose purpose is to assist area industries in developing projects which will enhance the economic well-being of the County *(see,* General Municipal Law §§ 858, 890-h), properly concluded that the benefits inherent in the development of a project necessary to the economic well-being of an area, which project is observant of all relevant State statutes and regulations, outweigh the interest of the Town in the banning of such projects from its precincts.

We further find that SCIDA's consideration of alternate sites complied with the requirements of SEQRA. Noting that "[t]he degree of detail with which each alternative must be discussed will * * * vary with the circumstances and nature of each proposal" *(Webster Assocs. v Town of Webster,* 59 NY2d 220, 228), a review of the FEIS discloses that several alternate sites were appropriately considered. Included therein is a detailed analysis which takes into account the 20-year life span needed for the site, its proximity to the partnership's paper mills and technical compliance which included alternate technology, recycling facilities, disposal by independent contractors, incineration and alternate designs for the proposed facility, as required by 6 NYCRR 617.14 (f) (5). Hence, with each case to be judged on an individual basis and

with the courts having "chosen not to delineate the precise limits of the 'hard look doctrine' beyond the standard announced in *Matter of Jackson [v New York State Urban Dev. Corp.*, 67 NY2d 400, 417]" *(Residents of Bergen Believe in Envt. & Democracy v County of Monroe*, 159 AD2d 81, 84, *appeal dismissed* 76 NY2d 936, *lv denied* 77 NY2d 803), we find that SCIDA adequately considered the probable environmental impacts of the proposed facility and reasonably addressed all prevailing concerns with mitigating alternatives, resulting in a determination by Supreme Court which will not now be disturbed *(see, Matter of Town of Dryden v Tompkins County Bd. of Representatives*, 78 NY2d 331; *Residents of Bergen Believe in Envt. & Democracy v County of Monroe, supra; see also, Webster Assocs. v Town of Webster, supra)*.

■ Addressing next the Commissioner's determination that SCIDA was the appropriate "lead agency", under SEQRA such agency must be selected from among the "involved agenc[ies] principally responsible" for the carrying out, funding or approval of a project (6 NYCRR 617.2 [v]). An "involved" agency is defined by SEQRA as an agency with discretionary jurisdiction "to fund, approve or directly undertake" some aspect of the project (6 NYCRR 617.2 [t]). To avoid duplication of effort, only one "involved" agency will be named "lead agency" to coordinate the efforts of all the others *(see,* 6 NYCRR 617.6). A challenge may only be commenced by another "involved" agency *(see,* 6 NYCRR 617.6 [e]). We find that the Commissioner rationally concluded that the Town did not have standing to challenge SCIDA's designation since, by virtue of the changes in the application before SCIDA, the Town no longer was an "involved agency". Moreover, its designation of itself as "lead" agency by the Local Law did not serve to change its status since such law did not take effect prior to the Commissioner's determination. Accordingly, we find that Supreme Court properly upheld the dismissal of the Town's challenge *(see, Residents of Bergen Believe in Envt. & Democracy v County of Monroe, supra)*.

■ Addressing the issue of standing with respect to King as a landowner "owning property in the vicinity of the site of the proposed landfill", we find that, without more, Supreme Court correctly determined that special damages cannot be inferred since his property was not in nearby proximity to the project *(see, Matter of Sun-Brite Car Wash v Board of Zoning & Appeals*, 69 NY2d 406, 413).

Accordingly, after a review of all other issues raised which

we find not relevant to our determination, the judgment should be affirmed.

MIKOLL, J. P., MERCURE, CREW III and YESAWICH JR., JJ., concur.

Ordered that the judgment is affirmed, without costs.