[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
RULING ON DEFENDANT'S MOTION TO DISMISS
This matter is before the court in connection with the claim that the plaintiffs do not have standing to prosecute this action. Although no formal motion to dismiss was filed the parties and the court have understood, as a result of extensive pre-trial discussions, that defendant Roncari Development's Company argument that the plaintiffs lack standing to be in the nature of a motion to dismiss.
The plaintiffs are owner/operators of valet parking facilities in Windsor Connecticut. In this action they seek to enjoin the defendant Roncari, a business competitor, from conducting a valet parking business in Windsor. Also named as defendants are the Town of Windsor and James Plumridge, the Windsor Zoning Enforcement Officer.
The following facts give rise to this action. In 1985 a so-called moratorium on valet parking was implemented by the town of Windsor. A similar moratorium was enacted in 1987. In 1989 the Windsor Zoning Board of Appeals granted Roncari a permit to construct a valet parking facility. That permit was based on the zoning regulations in effect prior to the 1985 "moratorium" as a result of Judge Barall's ruling in Roncari Development Co. v.Windsor Locks Planning Zoning Commission, No. 310116 (May 3, CT Page 7766 1989), that the regulations implementing the 1985 moratorium were not lawfully adopted.
In 1991 Roncari obtained site plan approval. In 1992 Plumridge issued Roncari a building permit, but Roncari did not commence construction within six months of the issuance of the permit as required by the Windsor zoning regulations. In 1994, defendant Plumridge issued a new building permit based on the 1991 site plan approval.
This action was then commenced by the plaintiffs who seek declaratory and injunctive relief. They allege, generally, that Roncari was given preferential treatment in that it, unlike the plaintiffs, has been permitted to develop a new valet parking facility, despite the 1987 moratorium. The plaintiffs further allege that based on the 1987 moratorium they made certain business decisions on the assumption that there would be no increase or expansion of valet parking in Windsor, and that the actions of the defendants have interfered with their reasonable business expectations.
Specifically, the first and second counts allege equal protection violations by the Town of Windsor and Plumridge arising out of their alleged failure to uniformly apply the 1987 moratorium to all valet operators. The third and fourth counts against the Town and Plumridge allege a denial of due process arising out of their failure to provide notice of and conduct a public hearing prior to granting Roncari a building permit in 1994. Finally, counts 5, 6 and 7 allege that the Town, Plumridge and Roncari unlawfully interfered with the plaintiffs' business expectancy.
The defendant Roncari alleges that the plaintiff does not have standing to assert the above claims. Specifically, Roncari argues that the plaintiffs have failed to allege that it has suffered "special harm" and thus is not entitled to injunctive relief. Roncari also argues that an earlier decision by Judge Mulcahy concluding that the plaintiffs did not have standing in an administrative appeal to challenge the decision of the Zoning Board of Appeals granting Roncari its building permit controls this case, under the doctrine of claim preclusion.
Our Appellate Court has stated that standing is not:
a technical rule intended to keep aggrieved parties out CT Page 7767 of court; nor is it a test of substantive rights. Rather, it is a practical concept designed to insure that courts and parties are not vexed by suits to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented.
DiBonaventura v. Zoning Board of Appeals, 24 Conn. App. 369, 373-74
(1991). The same court has warned against applying "an overly technical application of the test for aggrievement." Id., 377. Likewise, in a similar context the Court of Appeals of New York has warned that, "standing principles, which are in the end matters of policy, should not be heavy handed; in zoning litigation in particular, it is desirable that land use disputes be resolved on their own merits rather than by preclusive, restrictive standing rules. Sun-Brite v. Bd. of Zoning,508 N.E.2d 130 (N.Y. 1987).
The first four counts of plaintiffs' complaint allege constitutional violations. Claims of this type, in the land use context, are appropriate for declaratory and injunctive relief; Fuller, Land Use Law and Practice, § 41.7 (1993). Indeed, a plaintiff alleging constitutional violations arising out of the action or inaction of governmental entities need not exhaust administrative remedies; Friedson v. Westport, 181 Conn. 230
(1980), but can instead bring a direct action against the municipality or municipal officials. Id.
Plaintiffs assert that their right to equal protection and due process of law has been violated by the failure of the municipal defendants to apply the law evenly and to provide adequate notice of proposed actions which the plaintiffs allege materially affect a protected property or liberty interest. These allegations, coupled with plaintiffs' claim of injury arising from these actions, raise classic equal protection and due process claims.
While it is true, as defendant Roncari notes, that the plaintiffs have failed to allege "special harm"; Cummings v.Tripp, 204 Conn. 67, 75 (1987); proof of which is necessary to obtain injunctive relief; Tondro, Connecticut Land Use Regulation at 625; that question is more appropriately addressed in the context of the merits of plaintiffs' request for equitable relief. Accordingly, plaintiffs have standing to allege the CT Page 7768 constitutional violations alleged in the first four counts of their complaint.
Counts 5-7 of the plaintiffs' complaint allege that the defendants have interfered with their reasonable business expectations. Specifically, the plaintiffs claim that they made certain business decisions on the assumption that the 1987 moratorium precluded an expansion of valet parking operations and that the increased competition created by Roncari's allegedly unlawful entry into the valet market has injured their business.
Plaintiffs' standing to raise this issue is much more problematic. Sun-Brite Car Wash v. Board of Zoning,
508 N.E.2d 131 (1987), cited by both parties, is virtually indistinguishable from the present case. In that matter, the plaintiff, a car wash operator, challenged the approval granted to a competitor to establish a car wash across the street from the plaintiff's business. The court concluded that Sun-Brite lacked standing to challenge the competitor's zoning approvals because "the threat of increased competition . . . is not an interest protected by the zoning laws. . . . Individual property owners have no vested rights to monopolies created by zoning laws or ordinances. These are not enforced at the instance of one competitor in order to prevent or reduce competition." Id. at 134.
In his treatise Professor Tondro concurs. "The fact that the plaintiff's business will suffer increased competition due to the granting of a permit is not the injury the aggrievement requirement is designed to protect. This reflects a commonly stated view that land use regulations ought not to be used to stifle competition." Tondro, Connecticut Land Use Regulation, supra, 542. This rule, however, as Professor Tondro notes, is "more often asserted than applied." Id. A review of relevant cases discloses that Connecticut courts seem to avoid the harsh results of rigidly enforcing the rule prohibiting aggrievement based on economic injury by skirting the issue. See, Gregorio v.Zoning Bd. of Appeals, 155 Conn. 533 (1973), in which the court concluded that a competitor was aggrieved as a result of the additional traffic that would result from the competitor's presence. See, also, Cadoux v. Planning Zoning Comm'n ofWeston, 162 Conn. 425 (1973).
Because we have been cautioned not to engage in a hyper-technical interpretation of the standing doctrine, DiBonaventurav. Zoning Board of Appeals, supra; and because the rule barring CT Page 7769 standing based on economic injury is applied more in the breach than in fact; Tondro, supra; the plaintiffs may proceed with counts 5-7 of their complaint. Many of the claims raised by the defendants in their motion to dismiss undoubtedly will be raised again in the context of considering whether it is appropriate to grant injunctive relief.
The defendant Roncari also argues that the issue of plaintiff's standing in this matter was conclusively decided in an administrative appeal involving the same parties. AirportValet Parking, Inc. v. Windsor Locks Zoning Board of Appeals, CV365909, January 9, 1992 (Mulcahy, J.). While it is true that the doctrine of standing in a civil case and the concept of aggrievement in a zoning appeal are similar, they are not coextensive. Fuller, Land Use Appeals and Litigation, supra, § 32.7. Judge Mulcahy's conclusion that the plaintiffs were not aggrieved in Airport Valet Parking, supra, derived from his conclusion that the injury complained of in that case was in the nature of a claim for lost business, a injury not recognized as constituting aggrievement for purposes of a zoning appeal. It is that very claim which is raised in this case, not in the context of an administrative appeal, but in an independent action seeking injunctive and declaratory relief. Because there is not an identity of issues between the instant case and Airport ValetParking, the doctrine of claim preclusion does not apply.Commissioner of Environmental Protection v. Connecticut BldgWrecking Co., 227 Conn. 175 (1993).
Accordingly, the defendant Roncari's Motion to Dismiss is denied.