■ BAIS YOEL OHEL FEIGE et al., Appellants, v CONGREGATION YETEV LEV D'SATMAR OF KIRYAS JOEL, Respondent. [885 NYS2d 741]—

In an action, inter alia, pursuant to RPAPL article 15 to compel the determination of claims to real property, the plaintiffs appeal, as limited by their brief, from so much of a judgment of the Supreme Court, Orange County (Owen, J.), entered February 14, 2008, as, after a nonjury trial, is in favor of the defendant and against them on the second and third counterclaims declaring that their property is being utilized as a nonconforming, unlawful house of worship subject to certain special permit review provisions of the Code of the Village of Kiryas Joel, enjoining them from continuing such use pending an appropriate municipal application and determination, declaring that the defendant possesses reserved easement rights to the use and control of the basement area directly beneath the former rabbinical quarters of their property to install, repair, and maintain all water, heating, ventilation, air conditioning, sewer, and other utility lines, piping, equipment, apparatus and infrastructures in, upon, over, and under their property, and in favor of the defendant and against them on the second counterclaim in the principal sum of $744,833.35.

Ordered that the judgment is modified, on the law, (1) by deleting the provision thereof in favor of the defendant and against the plaintiffs in the principal sum of $744,833.35 on the second counterclaim, and (2) by deleting from subparagraph (a) of the fourth decretal paragraph thereof the words "special use permit" and substituting therefor the words "site plan"; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements.

The Supreme Court properly determined that the defendant has standing to assert a cause of action seeking to enjoin the plaintiffs from allegedly violating the Code of the Village of Kiryas Joel (hereinafter the Code; *see Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead,* 69 NY2d 406, 413 [1987]; *Zupa v Paradise Point Assn., Inc.,* 22 AD3d 843, 843-844 [2005]). The court, however, incorrectly applied a former Code provision that was in effect only prior to September 4, 2007, which prohibited the operation of a place of worship in a residence district without a special permit (*see* Code of Vil. of Kiryas Joel former § 155-19 [B]; § 155-21). In 2007 the Village amended the Code, reclassifying the operation of a place of worship in a residence district as a "permitted principal use" (Code of Vil. of Kiryas Joel § 155-19 [A] [10], as amended by Local Law No. 7 [2007] of Vil. of Kiryas Joel). Under the Code, as amended, such use is subject to site plan review by the Village Planning Board (*see* Code of Vil. of Kiryas Joel § 155-19 [A] [10]; § 155-21, as amended by Local Law No. 7

[2007] of Vil. of Kiryas Joel). Thus, the Supreme Court's determination to enjoin the plaintiffs from using the subject premises as a place of worship pending municipal approval should not be disturbed.

The Supreme Court, however, should not have awarded damages on the defendant's second counterclaim in the principal sum of $744,833.35 for the plaintiffs' use of the defendant's parking areas. Although the evidence presented at the nonjury trial established that individuals attending religious services at the premises owned by the plaintiff Bais Yoel Ohel Feige continuously used the defendant's parking areas on a daily basis, and the plaintiffs did not deny being aware of this practice, the plaintiffs' president testified that they did not instruct their visitors where to park, their congregation was open to everyone and was not a members-only congregation, and they did not keep track of the individuals who attended services there. Consequently, there was no evidence establishing that the plaintiffs advised their visitors to park on the defendant's property, thus rendering them responsible for the visitors' alleged trespasses (see Golonka v Plaza at Latham, 270 AD2d 667, 669-670 [2000]).

Moreover, the evidence also established that the defendant congregation did not attempt to restrict parking in any way whatsoever in the subject parking areas. Indeed, the defendant's vice-president testified that, other than designating certain parking spaces for the handicapped, the defendant did not mark with signage or in any other way restrict parking in the parking areas at issue. Thus, the defendant did not refute the testimony of the plaintiff's president, who stated that the defendant opened the subject parking areas to the general public, and that anyone could park there (see e.g. Woodhull v Town of Riverhead, 46 AD3d 802, 804 [2007]).

Indeed, the members of the defendant congregation, which has approximately 3,000 members, used the same parking areas as the plaintiffs' visitors, and the defendant's witnesses admittedly did not attempt to count the number of vehicles in the parking areas attributable to the plaintiffs' visitors. When the defendant's vice-president was asked to estimate the greatest number of cars he had seen at one time that were attributable to the plaintiffs' visitors, he estimated that number to be between 50 and 100; the defendant's assistant administrator estimated that number to be between 50 and 70. Neither of these witnesses, however, indicated the frequency with which he had observed the maximum estimated number of such vehicles, or specified the particular time period during which the

maximum estimated number of such vehicles were observed. Moreover, the testimony of the defendant's assistant administrator also revealed that some members of the defendant congregation also frequented the plaintiffs' premises, albeit not on a regular basis. Thus, the testimony relied upon by the defendant was too speculative and conclusory to support its claim for monetary damages based on the trespass arising from the purported use of the parking areas by members of the plaintiffs' congregation to the exclusion of their own members (*see Kaplan v Incorporated Vil. of Lynbrook,* 12 AD3d 410, 412 [2004]).

Accordingly, there was no basis to hold the plaintiffs liable for the alleged trespass of unidentified individuals attending services at their premises in the absence of any evidence that they caused or directed those individuals to trespass (*id.* at 412; *see Golonka v Plaza at Latham,* 270 AD2d 667, 669-670 [2000]; *Wen Ying Ji v Rockrose Dev. Corp.,* 21 Misc 3d 1104[A], 2008 NY Slip Op 51947[U] [2008]). Consequently, the second counterclaim should have been dismissed.

Finally, the defendant is entitled to a judgment declaring that it possesses an implied easement for the use and control of the basement and the roof of the subject premises "to install, repair, and maintain all water, HVAC, sewer and other utility lines, piping, equipment, apparatus and infrastructure in, upon, over and under" the subject premises. The defendant demonstrated that its property and the plaintiffs' property were once in unitary ownership, that the defendant's use of the property prior to the separation was continued, obvious, manifest, and meant to be permanent, and that such an easement is a reasonable necessity, rather than a mere convenience (*see West End Props. Assn. of Camp Mineola, Inc. v Anderson,* 32 AD3d 928, 929 [2006]; *Four S Realty Co. v Dynko,* 210 AD2d 622, 623 [1994]; *Monte v DiMarco,* 192 AD2d 1111, 1112 [1993]). Skelos, J.P., Angiolillo, Chambers and Lott, JJ., concur.