Matter of Real Estate Bd. of N.Y., Inc. v City of New York (2018 NY Slip Op 05906)





Matter of Real Estate Bd. of N.Y., Inc. v City of New York


2018 NY Slip Op 05906


Decided on August 23, 2018


Appellate Division, First Department


Moulton, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 23, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick,J.P.
Angela M. Mazzarelli
Richard T. Andrias
Troy K. Webber
Peter H. Moulton,JJ.


160081/15 101798/15 6109 

[*1]In re The Real Estate Board of New York, Inc., Petitioner-Appellant,
v
City of New York, et al., Respondents-Respondents. 
The Real Estate Board of New York, Inc., Plaintiff-Appellant, 
City of New York, Defendant-Respondent.



Plaintiff appeals from the order of the Supreme Court, New York County (Margaret A. Chan, J.), entered June 23, 2016, which granted defendant's motion to dismiss the complaint, and from the order of the same court and Justice, entered June 23, 2016, which granted respondents' motion to dismiss the petition brought pursuant to CPLR article 78 to annul Local Law No. 50 (2015) of the City of New York.




Schlam Stone & Dolan LLP, New York (Richard H. Dolan of counsel), for appellant.
Zachary W. Carter, Corporation Counsel, New York (Qian Julie Wang, Richard Dearing and Devin Slack of counsel), for respondents.



MOULTON, J.


These consolidated appeals arise from a plenary action and an article 78 proceeding both challenging Local Law No. 50 (2015) of the City of New York.
Enacted in June 2015, Local Law 50 places limits on conversions of Manhattan hotels with at least 150 units. The law places a two-year moratorium (later extended to four years, i.e., to June 2019) on the conversion to full-time residential use of more than 20% of qualifying hotels' "primary hotel space" (see Administrative Code of City of NY § 25-701), which is defined essentially as living and sleeping space for guests. The law exempts any conversions begun in the 24 months preceeding the law's effective date. Local Law 50's stated purpose is to allow study of the effect on the City's economy of such residential conversions of large hotels. Large hotels, the legislative findings assert, are essential to vacation and business travelers, important generators of well paying jobs, and anchors for surrounding economic activity. The legislative findings express concern that conversions are continuing apace and may be "irreversible" (Local Law 50 § 4).
Owners of qualifying hotels may seek a waiver from the Board of Standards and Appeals (BSA) of Local Law 50's limitations on conversions. The waivers are not as of right. The law provides, in relevant part:
"In determining whether to issue a waiver under this section . . . the [BSA] shall assess whether [the limits on conversion] permit[] a reasonable rate of return, while also taking into account practical difficulties or unnecessary hardship in the way of strict application of such section, so that the spirit of the law shall be observed, the public safety and welfare secured and substantial justice done" (Administrative Code of City of NY § 25-703[d]).
The waiver provision provides criteria for determining a "reasonable financial return" and then states:
"The [BSA] may grant a waiver pursuant to this section only to the minimum extent necessary to afford relief, in accordance with the intent and purposes of this chapter. In granting such a waiver, the [BSA] shall make an express finding that it is the minimum waiver necessary to afford relief" (Administrative Code § 25-703[e]).
Plaintiff/petitioner Real Estate Board of New York (REBNY) is a non-profit corporation whose approximately 17,000 members are property owners, developers, lenders, managers, architects, designers, appraisers, attorneys, and brokers involved in the real estate industry in New York City. REBNY asserts that approximately 175 hotel properties in Manhattan fall within the ambit of Local Law 50. REBNY avers that while it is sometimes difficult to determine which entities are the beneficial owners of real property from public records, an initial survey indicates that at least 29 REBNY members own hotels affected by Local Law 50. REBNY asserts that by restricting the rights of the affected hotel owners to convert their properties to condominiums and other residential uses, Local Law 50 has reduced the value of the affected properties to an unspecified degree. It opposes the law on a variety of grounds.
In its article 78 proceeding, REBNY seeks to annul Local Law 50 and permanently enjoin respondents (the City) from enacting similar legislation without complying with the City Charter's Uniform Land Use Review Process (ULURP) and the State Environmental Quality Review Act (SEQRA). In its plenary action, REBNY asserts state and federal constitutional claims sounding in taking without just compensation, due process (under the theory that the law [*2]lacks a rational basis), and equal protection (under the theory that the law encumbered the class of hotel owners for the benefit of their employees). The merits of these claims are not before us on this appeal.
The City moved to dismiss both the action and the proceeding on the ground that REBNY lacks standing to bring its claims. The City also argued that the claims are not ripe. Supreme Court dismissed all of REBNY's claims for lack of standing. It did not reach the ripeness issue. We now modify to deny the motion as to all claims except those asserted under 42 USC § 1983.
The Court of Appeals set forth the requirements of organizational standing in Society of Plastics Indus. v County of Suffolk (77 NY2d 761 [1991]). An organization must plead facts tending to show that 1) one or more of its members would have standing to sue; 2) the interests it asserts are germane to its purposes so as to satisfy the court that it is an appropriate representative; and 3) neither the asserted claim nor the relief requires the participation of the individual members (id. at 775). Other rules of standing applicable to individuals apply with equal force to organizations. Particularly pertinent in the context of a challenge to administrative action is the rule that the litigant must allege injury in fact which falls within the zone of interests protected by the statute invoked (id. at 773). Furthermore, especially in land use matters, the injury must be "different in kind or degree from that of the public at large" (id. at 775).
Owners of real property who are subjected to a new zoning classification or other use restriction are "presumptively affected by the change" and "therefore technically have standing" to assert claims (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, 69 NY2d 406, 415-416 [1987]; see Matter of Skenesborough Stone v Village of Whitehall, 229 AD2d 780 [3d Dept 1996] [landowner had standing to challenge ordinance requiring municipal approval before issuance of mining permit]).
Accepted as true for purposes of these CPLR 3211 motions, REBNY's assertion that its member hotel owners are currently negatively affected by the moratorium is sufficient to establish standing in the plenary action and in the article 78 proceeding under ULURP (see Society of Plastics Indus., 77 NY2d at 774). REBNY does not have standing under SEQRA for reasons discussed below. REBNY's status as a real estate industry advocacy organization makes it an appropriate representative of those members' interests. No individual participation by any of its members is required for it to assert its claims of the statute's facial invalidity (see Mulgrew v Board of Educ. of the City School Dist. of the City of N.Y., 75 AD3d 412 [1st Dept 2010]).
REBNY's allegations of its members' injury in fact are bolstered by Local Law 50's declaration of legislative intent. The law's preamble evinces the City Council's concern that hotel conversions cause a loss of hotel employment and tourism dollars (Local Law 50 § 1[a][2]). Notably, that section itself notes the "recent conversion history" attributable to the "current market conditions" (id.). It also specifically notes that "the owners of several such hotels in Manhattan have already announced their intention to undertake the conversion of at least some of their hotel rooms to residential apartments" (id.). Presumably, if the "current market conditions" were not such that hotel conversions were in fact more profitable than the current use, there would be no need for Local Law 50.
The dissent's view of standing is unduly restrictive (see Matter of Sun-Brite Car Wash, 69 NY2d at 413 ["Standing principles, which are in the end matters of policy, should not be heavy-handed; in zoning litigation in particular, it is desirable that land use disputes be resolved on their own merits rather than by preclusive, restrictive standing rules"]). To establish standing, the dissent would require that REBNY demonstrate that a member 1) applied for a construction permit during the moratorium or demonstrated existing plans to convert 20% or more of their primary hotel space to residential use; 2) was not exempt under Local Law 50; and 3) unsuccessfully applied to the BSA for a waiver. However, the dissent's required demonstration [*3]fails to account for the alleged diminution of property value, or, at a minimum, for the immediate and actual injury associated with the costs of applying for a permit or a waiver.[FN1]
The dissent notes the lack of evidentiary support for REBNY's claim that hotel owners' property values have diminished. The dissent's focus on proof however overlooks that "proof of special damage or in-fact injury is not required in every instance to establish that the value or enjoyment of one's property is adversely affected" (id.).
We agree with the dissent that REBNY cannot assert a SEQRA claim in the article 78 proceeding. REBNY has not shown that environmental concerns are germane to REBNY's organizational purposes, which focus on the economic and political health of the real estate industry. Unlike the individual property owner in Matter of Har Enters. v Town of Brookhaven (74 NY2d 524 [1989]), who had standing to assert a SEQRA claim, petitioner's standing, as an organization, is foreclosed by Society of Plastics Indus. (77 NY2d 761) and Matter of Association for a Better Long Is., Inc. v New York State Dept. of Envtl. Conservation (23 NY3d 1 [2014]).
In Society of Plastics Indus., the Court of Appeals held that a plastics trade organization lacked standing to assert a SEQRA claim "because it has not demonstrated that the interests it asserts in this litigation are germane to its purposes" (77 NY2d at 776). The Court rejected the organization's argument that it sought to protect its members' environmental interests, concluding that protecting its members' interests in air quality and traffic was not germane to the organization's purposes (id.). In reaching this conclusion, the Court observed that the organization, and its for-profit member corporations, are entities "whose economic interests are not served by bans on plastics products" (id.). The Court reiterated that "[e]conomic injury is not by itself within SEQRA's zone of interests" (id.). This limitation is consistent with "the policy of protecting the welfare of the community by limiting judicial review of remedial legislation when such challenges are made by pressure groups seeking to delay or defeat action in order to further their own economic interests" (id. at 789).[FN2]
REBNY's claimed environmental harm is nothing more than economic harm (i.e., the reduction in property values, the loss of business opportunities and the added expense of applying for a waiver under Local Law 50). REBNY's own filings reflect that the organization's constitution mentions the environment only once, and only insofar as the environment relates to economic impact. The affidavit by REBNY's president does not salvage REBNY's standing argument. The president claims that "SEQRA is a concern" for all REBNY members in "proximity" to the hotels due to potential impacts on traffic, noise, air quality, waste disposal and demand for public services. This argument, which mirrors the argument made and rejected in Society of Plastics Indus., fails to establish injury separate and apart from injury to the general public (77 NY2d at 777-778]; see also Matter of Sun-Brite Car Wash, 69 NY2d at 414-415 [lessee lacked standing to challenge a zoning board's decision to grant a variance to a gas station located directly across the street from the lessee because the lessee's business interests did not fall within the zone of interests protected by zoning laws]).
We reject the City's alternative argument that REBNY's constitutional claims are not ripe for adjudication (see Church of St. Paul & St. Andrew v Barwick, 67 NY2d 510, 518-519 [1986], cert denied 479 US 985 [1986]). Because it held that plaintiff lacked standing, Supreme Court did not reach this argument.
REBNY alleges that Local Law 50 has caused owners of large hotels an immediate injury by reducing the value of their properties. This constitutes a facial challenge to Local Law 50 because REBNY claims that the mere enactment of the statute constitutes a violation of its members' constitutional rights.[FN3] Facial challenges "are generally ripe the moment the challenged regulation or ordinance is passed" (Suitum v Tahoe Regional Planning Agency, 520 US 725, 736 [*4]n 10 [1997]; see also Kittay v Giuliani, 252 F3d 645, 646—647 [2d Cir 2001])[FN4]. This allegation "does not depend on the extent to which petitioners are deprived of the economic use of their particular pieces of property or the extent to which these particular petitioners are compensated" (Yee v City of Escondido, 503 US 519, 534 [1992]). REBNY's facial challenge is thus distinguished from the "as applied" challenges brought by the individual plaintiffs in two cases cited by the dissent: Murphy v New Milford Zoning Commn. (402 F3d 342 [2d Cir 2005]) and Dougherty v Town of No. Hempstead Bd. of Zoning Appeals (282 F3d 83 [2d Cir 2002]). In those cases, individual plaintiffs challenged existing zoning laws as applied to their specific properties.
REBNY challenges the constitutionality of Local Law 50 on its face, and not in its application to a particular hotel owner. Accordingly, the fact that a waiver process is available under the statute to individual REBNY members is of no moment. Any waiver would be, by definition, an exception to Local Law 50's generally applicable provisions. Thus, a waiver may provide the possibility of ameliorating the alleged devaluation of an individual member's hotel property, but the waivers are not provided as of right, and they cannot be provided to all hotels affected by the statute without completely negating the statute's purpose. In any event, the waiver provision is a palliative for owners, not a panacea. Local Law 50 provides that waivers may be awarded "only to the minimum extent necessary to afford relief" (Administrative Code § 25-703[e]), which could mean a rate of return that the BSA finds balances a hotel owner's need to make a profit with the need to keep large hotels open for the economic health of the City.
Insofar as REBNY claims that approximately 29 of its members own hotels within the ambit of Local Law 50 and that the statute has had an immediate negative effect on the value of the affected hotel properties in alleged violation of these owners' constitutional rights, plaintiffs have stated a facial challenge and their claims are ripe for review. A "temporary" moratorium on certain types of building or development, such as that imposed by Local Law 50, can give rise to a facial challenge (see e.g. 119 Dev. Assoc. v Village of Irvington, 171 AD2d 656 [2d Dept 1991]). In a facial challenge, the claimant "must establish that no set of circumstances exists under which the [challenged statute] would be valid" (General Elec. Co. v. New York State Dept. of Labor, 936 F2d 1448, 1456 [2d Cir 1991] [quoting United States v Salerno, 481 US 739, 745 [1987]]). It remains to be seen whether REBNY can substantiate these allegations. However, REBNY's pleadings are sufficient to survive a motion to dismiss.
Since REBNY does not address its claims under 42 USC § 1983 before this Court, those claims are deemed abandoned.
We reject REBNY's argument that it is entitled to the immediate entry of judgment on its article 78 petition. Upon denial of a CPLR 7804(f) motion, a respondent should normally be allowed to answer to assert any colorable defenses. REBNY's proof must be put to the test (see Matter of Nassau BOCES Cent. Council of Teachers v Board of Coop. Educ. Servs. of Nassau County, 63 NY2d 100, 104 [1984]; Matter of Clavin v Mitchell, 131 AD3d 612, 614 [2d Dept 2015]).
Accordingly, the order of the Supreme Court, New York County (Margaret A. Chan, J.), entered June 23, 2016, which granted defendant's motion to dismiss the complaint, should be modified, on the law, to deny the motion as to all claims except those asserted under 42 USC § 1983, and otherwise affirmed, without costs. The order of the same court and Justice, entered June 23, 2016, which granted respondent's motion to dismiss the petition brought pursuant to [*5]CPLR article 78 to annul Local Law No. 50 (2015) of the City of New York, should be modified, on the law, to deny the motion except as to the claim based upon SEQRA, and otherwise affirmed, without costs.
All concur except Andrias, J. who dissents in part in an Opinion.




ANDRIAS, J. (dissenting in part)


Finding that petitioner/plaintiff, the Real Estate Board of New York, Inc. (REBNY) did not have organizational standing, Supreme Court dismissed both the article 78 proceeding, in which REBNY seeks to annul Local Law 50 of 2015 on the grounds that its enactment was procedurally defective, and the plenary action, in which plaintiff REBNY seeks a declaratory judgment annulling the law on constitutional grounds. Accepting REBNY's submissions as true for the purposes of the motions, the majority modifies to reinstate REBNY's constitutional claims and its claim that Local Law 50 was passed in derogation of the City Charter's Uniform Land Use Review Process (ULURP), finding that REBNY has standing to assert those claims because: (i) its members who own hotels that are subject to Local Law 50 are presumptively affected by the change; (ii) as a real estate advocacy organization, it is an appropriate representative of those members' interests; and (iii) no individual participation by any member is required for REBNY to assert its claims of facial invalidity. The majority affirms the dismissal of REBNY's claim asserted under the State Environmental Quality Review Act (SEQRA) on the ground that REBNY has not shown that environmental concerns are germane to its organizational purposes, and the economic injury alleged is not within SEQRA's zone of interests, and affirms the dismissal of REBNY's claims under 42 USC § 1983 as abandoned.
I agree with the majority that the dismissal of REBNY's SEQRA and 42 USC § 1983 claims should be affirmed. However, because I believe that REBNY's has made only speculative and amorphous allegations of potential future economic harm and has not satisfied the requirements for organizational standing, and that its constitutional claims are not ripe for review, I would go further and affirm the dismissal of the article 78 proceeding and the plenary action in their entirety. Accordingly, I respectfully dissent in part.
To avoid potential losses of jobs and tourism-related revenues resulting from the conversion of hotels to residential condominiums, Local Law 50 of 2015, effective June 2, 2015, imposed a two-year moratorium, pending the preparation and consideration of a report by designated City agencies, on conversions of more than 20% of the sleeping space in larger Manhattan hotels (at least 150 units) into other uses (see Local Law No. 50 [2015] of City of NY; Administrative Code of City of NY § 25-702)[FN5]. The law exempted hotels purchased during the two years preceding its enactment where the owner demonstrated an "interest in converting the covered lot from primary hotel space at the time of the purchase" (see Administrative Code § 25-701). It also allowed owners who wanted to convert more than 20% of the space in their large hotels to seek waivers from the New York City Board of Standards and Appeals (BSA) (see Administrative Code § 25-703).
REBNY is a New York City real estate industry trade association with some 17,000 members, including property owners, developers, lenders, managers, architects, designers, appraisers, attorneys, and brokers. In October 2015, it filed this article 78 proceeding seeking to annul Local Law 50 on the grounds that the City Council: (i) impermissibly bypassed the [*6]ULURP, which commits covered land use applications to the New York City Planning Commission (see NYC Charter §§ 192, 200; 201); and (ii) violated SEQRA by failing to consider whether the law would have a significant effect on the environment (see Environmental Conservation Law §§ 8-0101, 8-0105, 8-0109, 8-0113; 6 NYCRR 617.2, 617.5-617.7). REBNY also filed its plenary action, in which it asserted causes of action, under the Federal and New York State Constitutions, for the denial of due process (under the theory that Local Law 50 had no rational basis), the denial of equal protection (under the theory that Local Law 50 encumbered the class of hotel owners for the benefit of their employees), and the taking of private property without just compensation.
Supreme Court dismissed both the article 78 proceeding and the plenary action on the ground that REBNY did not have organizational standing, because it had not shown that any of its members suffered an "injury in fact" in the moratorium's first year, and offered only "speculative economic injuries" that its members might sustain during the moratorium's remaining 11 months. Distinguishing Matter of Har Enters. v Town of Brookhaven (74 NY2d 524 [1989]), the court also found that REBNY members' alleged economic injury was not within SEQRA's "zone of interests." Accordingly, the court did not reach the City's alternative argument that REBNY's constitutional claims were not ripe for review.
"Standing is a threshold determination . . . that a person should be allowed access to the courts to adjudicate the merits of a particular dispute" (Matter of Association for a Better Long Is., Inc. v New York State Dept. of Envtl. Conservation, 23 NY3d 1, 6 [2014] [internal quotation marks omitted]). To establish organizational standing to challenge a governmental action, a petitioner/plaintiff "must show that at least one of its members would have standing to sue, that it is representative of the organizational purposes it asserts and that the case would not require the participation of individual members" (New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 211 [2004]; see also Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 775 [1991]).
For a REBNY member to have standing to sue in a land use matter, the member must show an "injury in fact" and also establish that he or she "would suffer direct harm, injury that is in some way different from that of the public at large," which "falls within the zone of interests, or concerns, sought to be promoted or protected by the statutory provision under which the agency has acted" (Society of Plastics Indus. 77 NY2d at 774, 773 [internal quotation marks omitted]). "To constitute an injury in fact, [the] claimed harm must be direct and immediate' such that it cannot be prevented or significantly ameliorated by . . . administrative action or by steps available to the complaining party'" (Matter of Acevedo v New York State Dept. of Motor Vehs., 29 NY3d 202, 218 [2017], quoting Church of St. Paul & St. Andrew v Barwick, 67 NY2d 510, 520 [1986], cert denied 479 US 985 [1986]). The alleged harm cannot be "too speculative and conjectural to demonstrate an actual and specific injury-in-fact" (Matter of Kindred v. Monroe County, 119 AD3d 1347, 1348 [4th Dept 2014).
Citing, for example, Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead (69 NY2d 406, 415—416 [1987]), the majority finds that REBNY members who own hotels affected by Local Law 50 are presumptively aggrieved. However, in Sun-Brite, the Court of Appeals recognized that where a petitioner's only substantiated objection is the threat of increased business competition—an interest not within the "zone of interest" protected by the zoning laws—even a close neighbor lacks standing to contest a zoning determination. REBNY makes specific allegations of purported economic harm, namely that Local Law 50's enactment caused an immediate diminution in value of hotels subject to the law and a loss of earning potential by real estate brokers. These allegations are purely speculative and insufficient to establish an injury in fact.
REBNY does not identify any member who applied for a construction permit during the [*7]life of the moratorium, or who had existing plans to convert 20% or more of its large hotel's sleeping space to another use, who would not be exempt, and who had been denied a waiver by the BSA. Indeed, REBNY does not even identify a member who claimed to have a future intention to convert its property (see Matter of Morabito v Martens, 149 AD3d 1316, 1317 [3d Dept 2017], lv denied 29 NY3d 916 [2017]). Thus, REBNY's claim stands on speculation that one of its members will apply for a construction permit to convert more than 20% of sleeping space to a non-hotel and non-timeshare use during the moratorium, that the member would not already be exempt from the law, and that the member would be denied a waiver. As the United States Supreme Court has stated, a litigant's " some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the actual or imminent' injury that our cases require" (Lujan v Defenders of Wildlife, 504 US 555, 564 [1992]; see also Society of Plastics Indus., 77 NY2d at 778 [plaintiff's speculation about the future course of events could not supply the missing ingredient of injury in fact]; Nurse Anesthetists, 2 NY3d at 214 ["tenuous and ephemeral harm ... is insufficient to trigger judicial intervention" [internal quotation marks omitted]).
Nor did REBNY provide any competent proof, such as appraisals or market evaluations, to support its allegation that the moratorium resulted in an immediate diminution of property values. While it claims that 29 members own hotels that are subject to Local Law 50, it "does not know" whether any of them are exempt under the law. Further, without identifying a member with concrete conversion plans who has sought and been denied a waiver, REBNY has not shown that a member has been or will be denied a reasonable return on the property post-regulation.
The affidavit submitted by the broker-member of REBNY is insufficient to establish an injury in fact as its statements are conclusory and speculative (see Matter of Stewart Park and Reserve Coalition, Inc. v Town of New Windsor Zoning Bd. of Appeals, 137 AD3d 924 [2d Dept 2016]). As the City argues, essentially, the broker claims that he lost out on a potential commission that he could have earned only if the unspecified owners placed an unspecified hotel on the market, the potential purchasers had plans to convert more than 20% of the sleeping space, the potential purchasers intended to apply for a permit during the moratorium, and the broker negotiated and closed the deal. Nor do I agree with the majority that the modest expense that a hotel owner may incur in connection with an application for a waiver from the BSA suffices to constitute an injury in fact. Rather, the waiver process creates an administrative mechanism that a hotel owner may use to "prevent[] or significantly ameliorate[]" the impact of the moratorium (Matter of Acevedo, 29 NY3d at 2018 [internal quotation marks omitted]).
Furthermore, REBNY has "not alleged that it will suffer any specific environmental harm" as a result of Local Law 50, and therefore has failed to demonstrate that it has a "legally cognizable interest" under SEQRA (see Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency, 76 NY2d 428, 433 [1990] [internal quotation marks omitted]; see also Society of Plastics Indus., 77 NY2d at 778). REBNY's allegations concerning "impacts on the patterns and intensity of vehicular and pedestrian traffic on noise, on air quality, on waste disposal, on the socio-economic condition of the vicinity, and on demands for public services" do not suffice, as they fail to establish any harm distinct from that of the public at large (see Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d 297, 306 [2009]; Person v New York City Dept. of Transp., 143 AD3d 424 [1st Dept 2016]).
Matter of Har Enters. (74 NY2d 524 [1989], supra) does not mandate a different result. In Har, the Court of Appeals held that a property owner whose land was targeted for rezoning had a "legally cognizable interest in being assured that the town satisfied SEQRA" and had standing to bring a SEQRA challenge, even absent a showing of specific environmental harm (id. at 529). However, the petitioner in Har owned three parcels of land, applied for a permit for [*8]commercial use, and had a contract for the construction of a supermarket in hand, which the rezoning conclusively prevented from going forward. As set forth above, here, there is only speculation as to the possible impact of Local Law 50. REBNY offers contingent possibilities that may or may not apply to any of its members and may or may not ever ripen into a concrete injury for anyone.
Significantly, unlike Har, "this is not a case where to deny standing to [REBNY] would insulate government action from judicial scrutiny" (see Rudder v Pataki, 93 NY2d 273, 280 [1999]). Standing to challenge Local Law 50 would exist once an owner of a Manhattan hotel with at least 150 units applied for a construction permit to convert more than 20% of its sleeping space, was not already exempt from the law, and had been denied a waiver by the BSA. Further, as the majority finds, REBNY has not shown that environmental concerns are germane to its organizational purpose, which focuses on the economic and political health of the real estate industry (see Nurse Anesthetists, 2 NY3d at 211).
Based on REBNY's allegation that Local Law 50 has caused owners of large hotels an immediate injury by reducing the value of their properties, the majority rejects the City's alternative argument (not reached by Supreme Court) that REBNY's constitutional challenges are not ripe for adjudication. In so ruling, the majority accepts REBNY's argument that its constitutional claims assert "facial challenges" to Local Law 50, which were ripe for review from the moment it was passed. Again, I disagree.
A "facial challenge" considers only the text of a law, not its application to the particular circumstances of an individual. In contrast, an "as-applied challenge," requires an analysis of the facts of a particular case to determine whether the application of a law, even one constitutional on its face, deprived the individual to whom it was applied of a protected right (see Islamic Community Ctr. for Mid Westchester v City of Yonkers Landmark Preserv. Bd., 258 F Supp 3d 405, 415—417 [SD NY 2017]). REBNY's claims are premised on the conditions of use that Local Law 50 imposes on the property of its members who own hotels that are subject to the law. These challenges are plainly as-applied challenges (see Murphy v New Milford Zoning Commn., 402 F3d 342, 348—349 [2d Cir 2005]; Dougherty v Town of N. Hempstead Bd. of Zoning Appeals, 282 F3d 83, 89 [2d Cir 2002]). REBNY also fails to claim that there is no set of circumstances under which Local Law 50 would be valid (see Matter of E.S. v P.D., 8 NY3d 150, 158 [2007] [requiring showing that the law is unconstitutional "in any degree and in every conceivable application"][internal quotation marks omitted]).
Accordingly, for the constitutional challenges to be ripe for review, there must be a final determination that inflicts an actual injury (see Church of St. Paul & St. Andrew v Barwick, 67 NY2d 510, 519 [1996], supra). "Where the harm sought to be enjoined is contingent upon events which may not come to pass, [a] claim to enjoin the purported hazard is nonjusticiable as wholly speculative and abstract" (Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Cuomo, 64 NY2d 233, 240 [1984]).
Until a hotel owner applies for a waiver of Local Law 50, REBNY's due process and takings claims are premature (see Assn. for a Better Long Is., 23 NY3d at 9 ["Until petitioners submit a permit application and DEC imposes the requirements of the amended regulations to their detriment, allegations that they are affected by those requirements through an encumbrance on their property or the imposition of costs are too speculative"]; Matter of Warner v Town of Kent Zoning Bd. of Appeals, 144 AD3d 814, 821 [2d Dept 2016] ["petitioner's assertion that the application of the then-existing version of Town Code § 77-48 to the subject property resulted in an unconstitutional taking without compensation is not ripe for review, since she failed to establish that she exhausted her administrative remedies by applying for a variance"]; Dick's Quarry v Town of Warwick, 293 AD2d 445 [2d Dept 2002] [until the plaintiffs applied for a variance, their claims that rezoning a number of properties from manufacturing to agricultural [*9]deprived them of their " reasonable and legitimate investment expectations'" in violation of their constitutional due process rights would not be ripe for review]; Hawes v State of New York, 161 AD2d 745, 745—746 [2d Dept 1990], appeal dismissed in part, denied in part 76 NY2d 918 [1990]).
Moreover, REBNY's due process and takings arguments, by their very nature, demand inquiry into Local Law 50's specific effects on members' interests and individualized proof (see Lucas v South Carolina Coastal Council, 505 US 1003, 1015 [1992]; Hodel v Virginia Surface Mining & Reclamation Assn, 452 US 264, 294-295 [1981]). REBNY has also failed to identify a member who has been treated differently from a similarly situated class, and resolving the merits would require a court to examine the specific ways in which the law treated specific REBNY members.
Accordingly, I would affirm the dismissal of the article 78 proceeding and the plenary action.
Order, Supreme Court, New York County (Margaret A. Chan, J.), entered June 23, 2016, modified, on the law, to deny the motion as to all claims except those asserted under 42 USC § 1983, and otherwise affirmed, without costs. Order, same court and Justice, entered June 23, 2016, modified, on the law, to deny the motion except as to the claim based upon SEQRA, and otherwise affirmed, without costs.
Opinion by Moulton, J. All concur except Andrias, J. who dissents in part in an Opinion.
Renwick, J.P., Mazzarelli, Andrias, Webber, Moulton, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: AUGUST 23, 2018
DEPUTY CLERK



Footnotes

Footnote 1:The dissent cites to Matter of Sun-Brite Car Wash, which found that the petitioner lessee car wash lacked standing to challenge a variance granted to a neighboring gas station (69 NY2d 406). The dissent notes that the petitioner's concern in that case was increased business competition. The dissent stresses that the Court of Appeals found that the car wash lacked standing despite being "a close neighbor" (id. at 410). Here, the hotel owners are not lessees concerned with increased business competition. Rather, the facts at issue involve hotel owners whose concern is that Local Law 50 immediately reduces their property values. The broad language regarding standing in Matter of Sun-Brite Car Wash supports our position, not the dissent's position (id. at 414 ["an allegation of close proximity alone may give rise to an inference of damage or injury that enables a nearby owner to challenge a zoning board decision without proof of actual injury"]).

Footnote 2:REBNY unpersuasively attempts to distinguish Society of Plastics Indus. on the basis that that case did not involve a property owner who was directly affected by the challenged law. However, Matter of Association for a Better Long Is., which followed Society of Plastics Indus., involved a local government property owner and came to the same conclusion: the town lacked standing to assert a SEQRA violation because it failed to allege environmental harm (23 NY3d at 8-9). The Court of Appeals held that the SEQRA claim was properly dismissed despite the Town of Riverhead's claim that the regulations in question impeded the town's ability to develop a parcel of land (property conveyed to Riverhead for the express purpose of economic redevelopment) and caused the town to incur costs (id. at 9). Citing Society of Plastics Indus., the Court of Appeals reiterated that "economic injury alone does not confer standing to sue under SEQRA" (id. [brackets and internal quotation marks omitted]).
Footnote 3: "A facial challenge' to a statute considers only the text of the statute itself, not its application to the particular circumstances of an individual. An as-applied challenge,' on the other hand, requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right" (Field Day, LLC v County of Suffolk, 463 F3d 167, 174—175 [2d Cir 2006] [internal quotation marks and citation omitted]).
Footnote 4:While not bound by federal precedent on ripeness, New York courts may rely on it as persuasive authority (Church of St. Paul, 67 NY2d at 519).

Footnote 5:The moratorium has been extended to June 2019 (see Local Law No. 109 [2017]).