New York Univ. v City of New York (2024 NY Slip Op 04183)

New York Univ. v City of New York

2024 NY Slip Op 04183

Decided on August 08, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: August 08, 2024

Before: Webber, J.P., Gesmer, González, Scarpulla, Shulman, JJ. 

Index No. 153199/22 Appeal No. 2360 Case No. 2023-02986 

[*1]New York University, Plaintiff-Appellant,
v
City of New York, Defendant-Respondent.

Wilmer Cutler Pickering Hale and Dorr LLP, New York (Alan E. Schoenfeld of counsel), and Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC (Seth P. Waxman of the bar of the District of Columbia, admitted pro hac vice, of counsel), for appellant.
Sylvia O. Hinds-Radix, Corporation Counsel, New York (Claude S. Platton of counsel), for respondent.

Order, Supreme Court, New York County (Gerald Lebovits, J.), entered on or about May 17, 2023, which, insofar as appealed from as limited by the briefs, granted defendant City of New York's motion to dismiss plaintiff's complaint for declaratory and injunctive relief based on a finding that plaintiff lacked standing, reversed, on the law, without costs, the motion denied, and the matter remanded for further proceedings consistent with this order.
This appeal addresses the legality of the New York City Zoning Resolution (ZR), as amended to include, as relevant here, ZR § 143-11(a), which provides that university uses (classrooms and dormitories) are not permitted in the rezoned neighborhoods.
It is undisputed that historically, the SoHo and NoHo neighborhoods in New York City were primarily zoned for manufacturing. Over time, a significant residential presence evolved through loft conversions, variances, and special permits. In districts zoned for manufacturing uses, universities like appellant New York University (NYU) can use their properties "as of right" for administrative functions (faculty offices) but may not use them for educational purposes (classrooms and dorms) unless they obtain a zoning variance from the Board of Standards.
In 2020, the City Planning Commission approved the creation of a mixed-use district in SoHo/NoHo (Special District) in which "zoning rules applicable to both manufacturing and residential districts would jointly apply." Under this zoning plan, colleges and university uses would have been permitted "as of right" throughout the newly proposed district. After public hearing testimony from residents expressing concerns that the plan would allow colleges and universities to freely expand into these neighborhoods, the City Council Subcommittee on Zoning and Franchises approved the proposal with a modification that prohibited "as-of-right" university educational uses (such as classrooms and dorms) and maintained the variance requirement. ZR § 143-11(a) provides in pertinent part:
"Within the Special SoHo-NoHo Mixed Use District, the following use modifications shall apply:
(a) the following uses listed in Use Group 3A shall not be permitted:
colleges or universities, including professional schools but excluding business colleges or trade schools
college or school student dormitories and fraternity or sorority student houses. . . ."
NYU contends that when creating the new Special District that transformed the manufacturing district into a mixed manufacturing-residential district, the City was required to amend the ZR to allow universities to use their properties for educational uses (classrooms/dorms) without having to satisfy the variance requirement that had applied in the manufacturing district. NYU further contends that the ZR amendment adopted, which was modified to maintain the variance requirement, violates New York law as set forth in Cornell Univ. v Bagnardi (68 NY2d 583 [1986]) and its progeny.
Based on that theory, NYU sought a declaration that ZR § 143-11(a) was ultra vires and unconstitutional and sought an injunction permanently enjoining the City from applying that provision. As relevant here, the complaint alleges that NYU is presently entitled to this declaratory and injunctive relief because the unlawful ZR amendment "will interfere improperly with [NYU's] future uses" of properties it owns or will own in the Special District, citing the properties it owns or leases in the rezoned NoHo. It further alleges that the ZR amendment "interferes materially with [its] ability to develop and use [existing and future] facilities . . . for educational purposes in furtherance of its mission." In addition, the complaint alleges that the ZR amendment was adopted with the improper modification following public hearing testimony objecting to NYU's known efforts to expand into SoHo and NoHo. Finally, the complaint asserts that the enactment of the ZR amendment "has created justiciable controversy between [the parties] with respect to [NYU's] rights with respect to [its] use of real property within the rezoned areas."
The City moved to dismiss, as relevant here, on the grounds that NYU lacked standing to bring this facial challenge to the ZR amendment. The City contended that NYU, whose property use rights were left in the same place as before the amendment, did not allege a cognizable "injury in fact," given that NYU did not allege any immediate plans that were affected by the rezoning and alleged interference only with potential future uses of properties in the Special District.
In opposition, NYU submitted an affidavit providing details concerning the importance of the Special District to NYU, including in connection with its formulated plans for long-term growth and its need for additional educational space, and asserting that it has a past and present desire to do so that it has not pursued because of the time, expense, and risk of the variance process. NYU argued that owners of real property who are subjected to new zoning classifications or other use restrictions presumptively have standing to challenge those classifications. NYU asserted that the fact that the same restrictions on educational uses existed under the prior manufacturing zoning regime applicable to the areas in the Special District did not erase the injuries being caused by the use restrictions imposed under the new zoning regime.
Supreme Court granted defendant's motion to dismiss the complaint, holding that NYU lacked standing to obtain the declaratory and injunctive relief it sought. Specifically, the court held that because the prior zoning rules in the district also prohibited university uses of property without NYU obtaining a zoning variance, the rezoning did not adversely affect NYU's rights, and found that "absent some identifiable, current injury," NYU lacked standing to bring its current challenge.
In addition to finding that NYU had not alleged or shown a cognizable [*2]"injury in fact" because its ability to use its property as it wished had not been materially changed or curtailed as a result of the rezoning, the court found that to the extent property owners subject to a zoning change have "presumptive standing" based on the presumption that the change affects them, "any such presumption has been rebutted here by undisputed record evidence that the new zoning classification does not alter NYU's (lack of) right to use its property in the rezoned areas." The court also rejected NYU's argument that there is standing to challenge a land-use rule that applies to a property but does not limit the use or value of the property. The court found that unlike in the cases where the challenged regulations added restrictions on use, "NYU may not rely for standing purposes on a claim of injury from the City's choice . . . to refrain from lifting the prohibition on as-of-right educational uses in the rezoned area," because that argument goes to the merits of the challenge to the rezoning.
In Cornell, the seminal case regarding this issue,the Court of Appeals made clear that local zoning authorities may not totally restrict educational uses. The Court acknowledged a "presumption that educational uses are always in furtherance of the public health, safety and morals." It stated, however, that the presumption "may be rebutted by a showing that the proposed use would actually have a net negative impact, and that a reasonably drawn special permit requirement may be used to balance the competing interests in this area" (id. at 589). The Court noted that educational and religious uses ordinarily have inherent beneficial effects that must be weighed against their potential for harming the community, and that the "controlling consideration in reviewing the request of a school or church for permission to expand into a residential area must always be the over-all impact on the public's welfare" (68 NY2d at 595).
Similarly in Trustees of Union Coll. in Town of Schenectady in State of N.Y. v Members of Schenectady City Council (91 NY2d 161, 164 [1997]), the Court stated that a total ban of educational uses from a residential district was "unauthorized and therefore unconstitutional." The Court invalidated these "blanket bans on religious or educational uses in particular communities in favor of a case-by-case review, endorsing the special use permit application process as the proper procedure for addressing expansion requests" (Matter of Pine Knolls Alliance Church v Zoning Bd. of Appeals of Town of Moreau, 5 NY3d 407, 412 [2005]).
The issue presented is whether NYU has sufficiently demonstrated a cognizable injury in fact resulting from the challenged provision of the zoning amendment entitling it to a review of the merits of its facial challenge to ZR § 143-11(a) (Matter of Association for a Better Long Is., Inc. v New York State Dept. of Envtl. Conservation, 23 NY3d 1, 7 [2014] [the petitioners asserted a concrete interest [*3]in the matter the agency is regulating, and a concrete injury from the agency's failure to follow procedure]). We find that it has done so.
It is undisputed that NYU owns or leases space in multiple buildings in NoHo that are subject to ZR § 143-11(a)'s prohibition on university uses. Accordingly, NYU "must show that it would suffer direct harm, injury that is in some way different from that of the public at large" (Society of Plastics Industry v County of Suffolk, 77 NY2d 761, 774 [1991]). The injury-in-fact requirement, i.e., that a party has "an actual legal stake in the matter being adjudicated," ensures that the party seeking review has some concrete interest in prosecuting the action which casts the dispute "in a form traditionally capable of judicial resolution" (77 NY2d at 772).
The complaint alleges, among other things, that this zoning amendment, which was adopted following public hearing testimony objecting to NYU's known efforts to expand its presence into the rezoned neighborhoods, "interferes materially with [its] ability to develop and use [existing and future] facilities . . . for educational purposes in furtherance of its mission." In addition, in opposition to the motion to dismiss, NYU submitted an affidavit providing details concerning its formulated plans for long-term growth and its need for additional educational space, which made clear NYU's past and present desire to develop and use properties in the Special District for educational purposes. Contrary to the City's argument, this provides sufficient evidence of NYU's injury in fact resulting from the enactment of the purportedly illegal zoning amendment, and NYU was not further required to allege or provide evidence that it has specific plans to use properties in the Special District for educational uses that are presently in place and immediately impacted by ZR § 143-11(a).
NYU has sufficiently alleged an injury in fact. As stated by the Court of Appeals in Matter of Stevens v New York State Div. of Criminal Justice Servs. (40 NY3d 505, 515 [2023] [internal quotation marks and citations omitted]), "[t]he injury-in-fact requirement necessitates a showing that the party has an actual legal stake in the matter being adjudicated and has suffered a cognizable harm that is not tenuous, ephemeral, or conjectural but is sufficiently concrete and particularized to warrant judicial intervention"; while this requirement "is closely aligned with [the] policy not to render advisory opinions," "standing rules should not be applied in an overly restrictive manner where the result would be to completely shield a particular action from judicial review" (id.; compare New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207 [2004] [party seeking declaration that guidelines effectively imposing costs were improperly issued did not allege injury in fact based on allegations of future hypothesized harm]).
While the City argues that injury in fact cannot be found in the circumstances [*4]here, it appears to concede that the only reason it cannot be found is because NYU has no specific plans to use Special District properties for educational uses that are presently in place and immediately impacted by the ZR amendment and, at most, complains that its "ability" to develop and use properties is interfered with. The dissent also argues that NYU has not expressed a "harm that is not tenuous, ephemeral, or conjectural, but is sufficiently concrete and particularized to warrant judicial intervention." Without any support the dissent suggests that NYU must identify the specific property in the Special District that NYU intends to use for educational or dormitory purposes.
NYU, however, has alleged not just an interference with its ability or abstract interest but with its actual present intentions and desires, a showing of specific plans is not a necessary additional requirement for an injury-in-fact showing. NYU's claim that it has had a long-standing and continuing interest in expanding educational uses in the Special District whose implementation has been limited by the variance requirement is further evidenced by the fact that NYU previously put one of its Special District properties to educational use after obtaining a variance. There is no valid basis for predicating the injury-in-fact showing on evidence that NYU has expended time, money and other resources developing a particular plan for the renovation or conversion of a particular Special District property to educational uses. Judicial consideration of NYU's claim seeking a declaration as to the unconstitutionality of the ZR amendment should not require that it first experience the harm it seeks to avoid by challenging the amendment.
The dissent argues that while the language of the challenged ZR amendment may be different from the regulation that proceeded it, there is no functional difference, since the zoning rules in place before the rezoning also prohibited university uses of property without a variance. However, NYU's claim here is that this prohibition, which was valid in the prior manufacturing district and thus did not cause cognizable injury, is unlawful, ultra vires, and injurious to the property use rights to which a university is entitled in a mixed residential-manufacturing district. As noted by NYU, the fact that the same restriction existed in a prior zoning regime does not erase the injury a current restriction imposes under a new zoning regime.
Having dismissed the complaint based on a lack of standing, the trial court did not address the City's other arguments for dismissal on procedural grounds or for failure to state a claim, and we remand for further proceedings on those issues.
All concur except Gesmer, J. who dissents in a memorandum as follows:

GESMER, J. (dissenting)
 

I agree with the motion court that plaintiff New York University (NYU) has failed to demonstrate an injury in fact because it has not shown that its rights have been materially [*5]curtailed by the rezoning. In fact, NYU concedes that its property rights will be determined by a variance process that complies with Cornell Univ. v Bagnardi (68 NY2d 583 [1986]). Accordingly, I respectfully dissent.
On December 15, 2021, the City Council approved ZR § 143, which created the Special SoHo-NoHo Mixed Use District (Special District). NYU owns five buildings and leases space in two additional buildings in the Special District. Prior to enactment of ZR § 143-11, SoHo and NoHo were primarily zoned for manufacturing use. In manufacturing districts, an educational institution may not use its property for classrooms or dormitories as of right. However, it may be permitted to use its property for such purposes by successfully applying for a variance from the City's Board of Standards and Appeals (BSA). Indeed, NYU successfully applied for such a variance in 2013, and was permitted to use one of its properties for an educational use.
Under ZR § 143-11, the Special District is now zoned for a mixture of residential and manufacturing use. Of particular concern to NYU, ZR § 143-11(a) provides that classroom and dormitory use by colleges and universities is not permitted as of right in the Special District. In April 2022, NYU commenced this action against the City of New York seeking a declaratory judgment that ZR § 143-11(a) violates the New York State Constitution and the principles enunciated in Cornell Univ. (68 NY2d 583).[FN1] By order entered May 17, 2023, Supreme Court granted the City's motion to dismiss on the basis that NYU lacks standing because it failed to demonstrate an injury in fact. NYU appealed to this Court.
In order to establish standing to challenge a governmental action, plaintiff must demonstrate that it has suffered an "injury in fact" (New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 211 [2004]). The injury-in-fact requirement "necessitates a showing that the party has an actual legal stake in the matter being adjudicated and has suffered a cognizable harm that is not tenuous, ephemeral, or conjectural but is sufficiently concrete and particularized to warrant judicial intervention" (Matter of Mental Hygiene Legal Serv. v Daniels, 33 NY3d 44, 50 [2019] [internal quotation marks omitted]). The injury-in-fact requirement "is closely aligned with our policy not to render advisory opinions" (Matter of Stevens v New York State Div. of Criminal Justice Servs., 40 NY3d 505, 515 [2023]). Standing rules "help courts separate the tangible from the abstract or speculative injury, and the genuinely aggrieved from the judicial dilettante or amorphous claimant" (id. at 516 [internal quotation marks omitted]). The identification of an injury in fact is important because "the hard, confining, and yet enlarging context of a real controversy leads to sounder and more enduring judgments" (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 773 [1991] [internal quotation marks omitted]).
In Cornell Univ., the Court [*6]of Appeals addressed the degree to which municipal zoning ordinances may restrict educational uses consistent with their authority to protect the morals, health, welfare and safety of the community. As the Court noted, there is no question that educational institutions generally serve the public's welfare. As a result, their "total exclusion is beyond the scope of [] localities' zoning authority" (68 NY2d at 594). The Court held that the zoning ordinances at issue were improper because they failed to give sufficient deference to the universities' beneficial educational purposes by requiring the universities to demonstrate hardship in order to receive a special permit or variance (id. at 590).
However, the Court rejected the idea that these general principles require "full exemption from zoning rules for all educational . . . use" (id. at 594). It noted that it was deciding these issues in the context of the increasing tensions between "[s]prawling universities . . . and their neighbors" and clarified that "[t]here is simply no conclusive presumption that any . . . educational use automatically outweighs its ill effects" (id. at 595). Instead, the Court held that municipalities may and should balance presumptively beneficial educational use with the concerns of the neighboring community. It held that a zoning ordinance may properly require an educational institution to submit a detailed application including "disclosure of site plans, parking facilities, and other features of the institution's proposed use" (id. at 596). It held that requiring a detailed application is
"beneficial in that it affords zoning boards an opportunity to weigh the proposed use in relation to neighboring land uses and to cushion any adverse effects by the imposition of conditions designed to mitigate them . . . . These conditions, if reasonably designed to counteract the deleterious effects on the public's welfare of a proposed . . . educational use should be upheld by the courts, provided they do not, by their cost, magnitude or volume, operate indirectly to exclude such uses altogether" (id.).
Applying the framework provided by Cornell to the case before us leads me to conclude, for three reasons, that NYU has failed to demonstrate an injury in fact. First, as the motion court correctly determined, while it is true that the language of the challenged ZR amendment is different from that of the regulation that preceded it, there is no functional difference, from NYU's point of view, between the new zoning amendment and the prior one. Under the prior zoning regulation, NYU had to obtain a zoning variance in order to use its properties as dormitories or classrooms, and under ZR § 143-11(a) it must do so as well.[FN2] Since the challenged ZR amendment does not create a new restriction on NYU's use of its property, NYU is not entitled to a presumption that it has standing to challenge it (compare Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, [*7]69 NY2d 406, 415-416 [1987] [adjoining landowner presumptively affected by change of use on neighboring property]; Matter of Real Estate Bd. of N.Y., Inc. v City of New York, 165 AD3d 1, 6 [1st Dept 2018] [owners of property subject to new zoning classification or use restriction are "presumptively affected by the change and therefore technically have standing" (internal quotation marks omitted)]).
Second, NYU's sole claim in this case is that the ZR amendment violates the principles enunciated in Cornell (68 NY2d 583). However, NYU's counsel concedes in her affirmation submitted to the motion court that NYU may seek a variance in the Special District, and, if it does so, BSA will determine the variance application, as is its practice with regard to applications by religious and educational institutions, by extending "deference to [NYU] in accordance with the doctrine enunciated by the Court of Appeals in Cornell." Indeed, the BSA itself explicitly stated in the 2013 variance it granted to NYU that Cornell and other "well established precedents of the courts and this Board" require the BSA to give "significant deference" to educational institutions. This deference includes permitting an educational institution to assert, in lieu of the "hardship" showing usually required for a variance, that its programmatic needs cannot be accommodated without the variance. Accordingly, as NYU concedes, New York City's variance process complies with the principles articulated in Cornell.
Finally, I disagree with my colleagues that NYU has expressed a "harm that is not tenuous, ephemeral, or conjectural, but is sufficiently concrete and particularized to warrant judicial intervention" (Matter of Stevens, 40 NY3d at 515; Mental Hygiene Legal Serv., 33 NY3d at 50). The complaint does not identify any property in the Special District that NYU intends to use for educational or dormitory purposes. It states only that it seeks to "vindicate its rights and to protect itself . . . from future efforts by local authorities to erode or subvert the well-established principles of the Cornell doctrine" (emphasis added). NYU's entire claim in its complaint that the ZR amendment is "unconstitutional" is predicated on speculation that in some unspecified, possible, "future" variance application process, the BSA will fail to follow Cornell. The speculative nature of NYU's claim is amplified by its admission that the BSA acknowledges that it must follow Cornell, and that it did follow Cornell when it granted a variance to NYU in 2013.
I also disagree with my colleagues that NYU submitted any affidavit in support of its motion which establishes an injury in fact. The affidavit by NYU's Senior Director of Campus Planning identifies one property for which the university decided it was "not worth the time [and] expense" of seeking a variance. To explain that decision, he states that the 2013 variance took seven weeks from the date of submission of the application, and that NYU spent [*8]approximately $325,000 in professional fees in connection with that application. However, he does not state that the time spent to obtain the variance or the expense of doing so was prohibitive or would be in the future. He also does not claim that NYU has an immediate need for a variance for a particular property or that it cannot afford any fees that might be associated with seeking one. The City's requirement that NYU complete a detailed variance application which NYU may require professional services to complete is entirely consistent with Cornell.
As my colleagues in the majority correctly point out, the Court of Appeals has cautioned that "standing rules should not be applied in an overly restrictive manner where the result would be to completely shield a particular action from judicial review" (Stevens, 40 NY3d at 515). However, a determination that NYU has failed to demonstrate an injury in fact on this record would not shield ZR § 143-11(a) from review. Were the BSA to deny NYU a variance, NYU could challenge that determination by means of an article 78 proceeding, in which NYU will have a "concrete interest in prosecuting the action which casts the dispute in a form traditionally capable of judicial resolution" (Society of Plastics Indus., 77 NY2d at 772 [internal quotation marks omitted]). In such a case, should NYU believe that the BSA has failed to give the deference required under the Cornell doctrine, it could certainly challenge the BSA's improper failure to implement ZR § 143-11(a) in a manner that is consistent with the Court of Appeals' ruling in Cornell.
Conversely, because this record contains no evidence of a specific intention by NYU to seek to change the use of a particular building it owns or leases in the Special District, it is impossible to balance NYU's needs and rights to fulfill its educational purpose with the concerns of the neighbors of a particular property, as required by Cornell (68 NY2d at 589; see also Trustees of Union Coll. in Town of Schenectady in State of N.Y. v Members of Schenectady City Council, 91 NY2d 161, 166 [1997] [the "decision to restrict a proposed educational use can only be made after the intended use is evaluated against other legitimate interests, with primary consideration given to the over-all impact on the public welfare"]).
Similarly, in Matter of Sun-Brite Car Wash, the Court of Appeals stated that, in zoning litigation, "it is desirable that land use disputes be resolved on their own merits rather than by preclusive, restrictive standing rules" (69 NY2d at 413). However, the cases decided in Sun-Brite and the earlier case to which Sun-Brite cites for this dicta, Matter of Douglaston Civic Assn. v Galvin (36 NY2d 1 [1974]), all involved disputes over specific property development projects on identified properties for which variances had been granted. Accordingly, those cases could be decided on their merits. Here, because NYU has not identified a particular use modification for a [*9]particular property, there is no identifiable dispute which could be resolved on the merits in this case.
The majority focuses on NYU's argument that "the City is not constitutionally permitted to zone a neighborhood for residential uses and prohibit all college and university uses in the same area."[FN3] In support of this argument, NYU cites only to Cornell. This argument fails for two reasons. First, as discussed above, the City has not "prohibit[ed] all college and university uses" in the Special District, since NYU concedes that it may seek a variance that permits classroom and dormitory use, in addition to the currently permitted administrative and other uses (compare Trustees of Union Coll., 91 NY2d at 167 [zoning ordinance that failed to provide any means by which proposed educational uses could be balanced against the public's interest in historical preservation was unconstitutional]).
Secondly, whether the district at issue is zoned for residential, manufacturing, or mixed residential and manufacturing use does not change the Cornell analysis (see Albany Preparatory Charter School v City of Albany, 31 AD3d 870, 871 [3d Dept 2006] ["the general principles enunciated in (Cornell and Trustees of Union Coll.) apply with equal force to areas zoned commercial as well as those zoned residential"]). Cornell involved residentially zoned areas in which the Court held that a process that "affords zoning boards an opportunity to weigh the proposed use in relation to neighboring land uses and to cushion any adverse effects by the imposition of conditions designed to mitigate them" is permissible (68 NY2d at 596). Accordingly, a zoning amendment like the one at issue in this case that changes a manufacturing district in which educational uses were permitted with a variance into a mixed residential-manufacturing district in which educational uses remain permitted with a variance is entirely consistent with the principles articulated in Cornell, provided that there is a process, such as the BSA's variance procedure, that gives deference to a university's "presumed beneficial effect on the community" and balances the university's need to achieve its educational purposes with the needs of the surrounding community (Cornell, 68 NY2d at 595; see also Trustees of Union Coll., 91 NY2d at 166).
The majority cites to Matter of Association for a Better Long Is., Inc. v New York State Dept. of Envtl. Conservation (23 NY3d 1 [2014]) in support of its position that NYU has demonstrated an injury in fact. However, part of the holding in that case is not applicable to this case because that section of the opinion found that petitioners had adequately claimed an injury in fact because respondents had failed to follow statutorily required hearing and review procedures when they promulgated the challenged regulatory amendments. That holding has no relevance to this case, as there are no procedural claims in this case. Rather, NYU challenges ZR § 143-11(a) on the basis [*10]that its failure to permit educational use as of right is beyond the City's authority and thus unconstitutional.
With regard to NYU's constitutional claim, the holding in Association for a Better Long Isl. does not support the majority's holding in this case. In that case, the Court of Appeals found that petitioners had failed to establish injury in fact, and thus standing, with regard to the same substantive claim at issue in this case: that the challenged amendments were ultra vires. With regard to that claim, the Court held that "there has been no final agency action inflicting concrete harm," and "[u]ntil petitioners submit a permit application and [the agency] imposes the requirements of the amended regulations to their detriment, allegations that they are affected by those requirements . . . are too speculative" (23 NY3dat 9). The same reasoning applies in this case.
Accordingly, I respectfully dissent and would affirm the decision of the motion court. THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: August 8, 2024

Footnotes

Footnote 1: NYU's brief does not explain what constitutional provision it alleges the City has violated, but quotes Cornell for the proposition that "the total exclusion of educational institutions 'is beyond the scope of the localities' zoning authority'" (68 NY2d at 594 ["Because of the inherently beneficial nature of churches and schools to the public, we held that the total exclusion of such institutions . . . serves no end that is reasonably related to the morals health, welfare and safety of the community"]). At oral argument NYU's counsel clarified that its constitutional claim is based on the provision of the New York State Constitution which limits the authority of municipal governments to adopt local laws to certain subjects, including the "government, protection, order, conduct, safety, health and well-being of persons or property" within its boundaries (NY Const art IX, § 2[c][10]).
Footnote 2: NYU may continue to use these properties for administrative, faculty office, and other uses without a variance, as was the case before ZR § 143-11(a) was enacted.

Footnote 3: My colleagues slightly rephrase NYU's argument as being that ZR § 143-11(a) "is unlawful, ultra vires, and injurious to the property use rights to which a university is entitled in a mixed residential-manufacturing district."